## FRELEIGH vs. THE STATE.

1. The word "*respectable*," used in the 31st section of the act of February 27, 1843, concerning "Costs in criminal cases," is equivalent to the phrase, "*credible disinterested*," as used in the 17th section of the fifth article of the act of March 21, 1835, concerning practice and proceedings in criminal cases, (where application is made for a change of venue in a criminal case,) and they are each synonimous with the word *competent*. Therefore, a *respectable* or *credible disinterested* witness, means, in both acts, a *competent* witness.

2. All persons who are disinterested, and not infamous, are competent witnesses, and are presumed to be competent until the contrary appears.

3. The act authorizing a change of venue in criminal cases is imperative whenever a case is made out in conformity with its requisitions, and it is not left to the discretion of the Court, when the requirements of the act are complied with, to grant or refuse the application as a mere matter of discretion.

4. The granting of continuances is a matter of discretion in the court before which the cause is tried; and although the unsound exercise of this discretion is matter of error, yet, a plain and palpable case must be made out, to authorize the interference of the Supreme Court.

5. It is not a sufficient ground for a continuance, that the witness summoned to prove a particular fact was *not in attendance*, unless it appears, from the affidavit, that the fact could not be proved by any other person whose attendance could have been procured.

6. The Court may, in its discretion, permit witnesses to be recalled and examined, at any time before the jury retire, in criminal as well as civil cases, in order to supply testimony that has been omitted by inadvertence or mistake.

7. A ticket in a lottery, which entitles the holder to *one-fourth* of the prize drawn to its numbers, although usually called a quarter of a ticket, is *a lottery ticket*, within the meaning of the act of December 19, 1842, "to abolish lotteries, and to prohibit the sale of lottery tickets in this State," and may be so described in an indictment under this act.

8. In an indictment, under the act of December 19, 1842, "to abolish lotteries, and to prohibit the sale of lottery tickets in this State," for selling a lottery ticket, contrary to the provisions of said act, it is not necessary to set out the ticket by its tenor or purport: it is sufficient to describe the ticket as a "certain lottery ticket."

9. An indictment will lie, on the above act, for the sale of *a lottery ticket*, although the statute is in the plural, prohibiting the sale of *lottery tickets*.

10. The act of December 19, 1842, "to abolish lotteries, and to prohibit the sale of lottery tickets in this State, is constitutional. Where the legislature authorize a private individual, or a corporation, to raise a sum of money by lottery, to effect an object of public concern, as a railroad, a bridge, or a canal, the statute by which the authority is created may be, at any time, repealed, without violating any constitutional provision.

*Freleigh* vs. *The State.*

APPEAL from St. Louis Criminal Court.

E. Bates, *for Appellants.*

First: The venue ought to have been changed.

The petition and affidavits are, I believe, in exact conformity to law. The only ground of refusal taken by the Criminal Court was, that *it did not appear* that the auxiliary affiants were respectable. I contend, that, as nothing appears against them, they must be presumed *respectable:* in the sense of the law, respectable means credible; and all competent witnesses are credible until successfully impeached.

Second: The cases ought to have been continued on the affidavits filed. They are ample—covering the whole ground. (See the record.)

Third: In each case, the verdict was wrong, and ought to have been set aside.

1. The charge is for *selling* a ticket, and there is no proof nor attempt to prove a consideration.

2. The ticket alleged to have been sold is not identified, so as to distinguish it from any other ticket.

3. The charge in each count is for selling a *ticket,* and the testimony is, *one quarter of a ticket.*

Our own statute makes an obvious distinction between tickets and parts of tickets.—See Rev. Code, title, "Lotteries:" and the case of Shankland *vs.* Washington City (5 Peters' Rep., 390,) will serve to show a great practical difference between the two instruments.

Remark here, that the last act (1842) is cumulative, and does not repeal the law in the revised code. The two acts do not cover the same ground, and were not passed for the same object.

Fourth: All the counts charge the selling of a ticket *in a lottery,* and there is no testimony tending to show that there was a lottery. This I take to be conclusive: if the party had sold a ticket of a pretended lottery, he might perhaps be indicted for obtaining money by false pretences; but surely not for selling a ticket *in a lottery* which did not exist. The existence of such lottery was a material fact, and the prosecutor having alleged it, the burden of proof was on him.

*Note* 1.—In Freleigh's case, he was found guilty on all three counts, when obviously there was no testimony as to but one: and the counts are not variations of the same charge, but distinct offences—sales of tickets in different lotteries, and to different persons. Also, the instruction prayed by Freleigh was lawful and right, and the instruction volunteered by the court was illegal and wrong. Also, a witness was called back and examined, against the rule laid down in Mary *vs.* The State.

*Note* 2.—In Manning's case, the jury did not find all the issues. They found him guilty on the second count, and said nothing on the first, and this is equally good for a new trial, and in arrest of judgment.

Fifth: The judgment ought to have been arrested. The indictment is bad.

1. In not setting out the tenor of the ticket.

Whenever a written instrument forms a part of the gist of the charge, it must be set out verbatim. — See Archbold's Crim. Plead., 45; 2 Russell on Crimes, 359; and 2 East's Plead., 975.

2. But if the failure to set out the tenor may be excused, still, it must be so described as to be distinguished from all others of the like sort.

3. It is not affirmatively and distinctly alleged, that there was a lottery in which the sold ticket was. The existence of such lottery is an indispensable fact, and it is a general rule that indictments under statutes must state *all* the circumstances which constitute the definition of the offence in the act, so as to bring the defendant precisely within it.—1 Chitty's Crim. Law, 282, cited and approved by this Court in .Comfort's case, 5 Mo. Rep., 358, and in Martin's case, *Ibid.*, 361.

4. (As to Manning's case) The verdict disposes of only one count, and so no judgment could be rendered with the other half of the indictment· standing open.

5. It is a rule that hardly admits of exception, that indictments ·must be so drawn, that if the facts charged be true, the defendant cannot be innocent, and this Court has recognized the rule in Martin's case and in Hunter's case, 5 Mo. Rep., 360, 361.

And here it is matter of law, that New Franklin had the right to have lotteries whose tickets might be sold without any breach of law. — See the act to incorporate New Franklin, 16th January, 1833, (new edition Mo. Laws, vol. 2, p. 328.)

True, the act of February 8, 1839, p. 30, professes to modify and put conditions to the grant; and the act of December 19, 1842, professes totally to repeal it.

But those acts are illegal and void, in so far as they attempt to resume the grant of the lottery franchise. — See Territt *vs.* Taylor et al., 9 Cranch, 43, (3 Cond. Rep., 254;) Dartmouth College *vs.* Woodward, 4 Wheat., 518, (Cond. Rep., 526.) There is also a case in 1 Sumner's Reports, strongly bearing on same point, but I have not the book; the case is largely quoted in a late number of the Western Law Journal.

*Note.* — The Criminal Court of St. Louis has adjudged that the Hospital lottery is legal.

Sixth: The penal act of 1842 makes it criminal to sell lottery tickets — in the· plural; so, if the party sell only a single ticket, he can only be punished under· the law of 1835, and that exempts all lotteries theretofore authorized.

The courts of England have recognized this objection in their interpretation of the act 14 Geo. II., c. 6. — See Archbold's· Crim. Plead., 51, 52; 1 Blackstone's Commentaries, 88.

NAPTON, J., *delivered the opinion of the Court.*

The plaintiff in error was indicted at the May term, 1843, of the Saint Louis· Criminal Court, for vending a lottery ticket in the New Franklin Railroad Lottery. The indictment contained three counts: the first count charged, that the· defendant "did unlawfully sell to one Charles D. Gillespie a certain lottery ticket, in a certain lottery not authorized by the laws of this State, called the·

Franklin Railroad Lottery, (which said lottery ticket was then and there taken and kept by the said Gillespie, so that the jurors aforesaid cannot set forth the tenor or substance thereof,) contrary to the form of the statute," &c. The second and third counts differ only from the first in describing the lottery as the New Franklin Railroad lottery, and charging that the ticket was sold to a person to the jurors unknown.

Upon the application of the defendant, the case was continued until the July term; at which time the defendant applied for a change of venue, making the affidavit required by the statute in such cases, accompanied by two other affidavits, in which the affiants stated their belief of the truth of all the matters sworn to by the defendant. The Court examined the two compurgators of the defendant upon their *voir dire*, touching their means of knowledge, and the grounds on which they rested their belief, as sworn to in their affidavits, and refused to award the change of venue prayed for, because it did not appear that the said affiants were respectable persons, as required by law.

When the cause was called for trial, on a subsequent day of the same term, the defendant applied for a continuance, supporting his motion by an affidavit. This affidavit states, in substance, that the witness, on account of whose absence a postponement of the trial was desired, was material; that there was no other witness in attendance by whom the defendant could prove the same facts; that the residence of the witness is New Franklin, in Howard county, but that since the last term of this Court the witness had been absent in the South; that affiant had written to New Orleans, where he learned the witness had gone, for the purpose of taking his deposition, but had as yet received no answer. The affidavit contains the other statements usual in such cases, in relation to diligence; his expectation of procuring the deposition or attendance of the witness by the next term; and the absence of all improper motives, on the part of the affiant, in making the application. The affidavit also details the testimony which he expects the witness to give. The facts proposed to be proved are, that the witness is a member of the board of trustees of the town of New Franklin; that the board, having authority so to do, entered into a contract with one W. T. Phillips, conveying, for sufficient consideration, to said Phillips, the lottery privilege secured by the act of Assembly of this State, approved 16th January, 1833, and constituting the said Phillips attorney in fact, with full power to manage or sell the lottery privilege so granted; that said Phillips, on the 27th February, 1841, for valuable consideration, transferred to Granville B. Marshall and Joseph B. Smith said privilege, and that the sum of fifteen thousand dollars has not been realized from the sale of tickets in said lottery.

The motion for a continuance was overruled, upon the trial; a witness proved that he had purchased a quarter ticket from the defendant, in St. Louis, in the New Franklin Railroad Lottery; that the ticket read thus: "This ticket will entitle the holder to one quarter of such prize as may be drawn to its number," &c. After the witness had left the stand, and after the defendant's attorney had closed his remarks to the jury, to obviate some objections made by the defendant's counsel, the witness, at the instance of the circuit attorney, was recalled,

and testified, that his name was Charles D. Gillespie. The defendant offered no testimony, but asked the court to instruct the jury, that if they believed, from the evidence, that the defendant sold a quarter ticket, not a full ticket, as charged in the indictment, they must find for the defendant. The court refused this instruction, but gave other instructions, upon which no question is raised. The jury found the defendant guilty, and assessed his punishment at six months' imprisonment, in the county jail, and a fine of one thousand dollars.

The defendant moved for a new trial, for various reasons, which, as they are all relied on, in the assignment of errors, it is unnecessary to detail here. A motion was also made, in arrest of judgment. Both motions were overruled, and exceptions duly taken to the several opinions of the court during the progress of the cause.

The principal objections to the validity of the proceedings in the Criminal Court, may be embraced under the following heads:

*First:* The action of the court is held erroneous, in refusing to change the venue:

*Second:* In refusing the continuance asked for.

*Third:* In permitting a witness to be recalled, after the case was submitted to the jury.

*Fourth:* In refusing a new trial; and,

*Lastly,* In refusing to arrest the judgment.

The first error assigned is, the refusal of the court to grant a change of venue. The affidavits of the defendant and his compurgators conform literally to the requisitions of the statute; but it appears, from the bill of exceptions, that the witnesses who swore to their belief of the facts relied on by the defendant in his affidavit, were examined by the court, "touching their means of knowledge, and the grounds of their belief;" and though it does not appear, that the action of the court was affected by anything elicited in this investigation, yet the court, it is stated, refused to change the venue, on the ground, that *it did not appear* that the affiants were *respectable*, as required by law. If the term, "*respectable*," is to be understood in its ordinary acceptation, it is obvious, that the granting a change of venue must be, in all cases, to which the statute applies, purely a matter of discretion of the court. The phrase is one unknown to the law, and it must be in the breast of every judge, who is called upon to give it a construction, to fix the criterion of respectability, by which his action will be governed. Nothing could be more uncertain and fluctuating than such a standard; and with this interpretation of the law, a change of venue could never be obtained, however exactly and literally the applicant might comply with the terms of the statute, unless the judge, in his discretion, should think proper to grant it. As the law stood in 1835, (Rev. Code, p. 478,) the truth of the allegations contained in the petition were required to be supported by the affidavit of some "*credible disinterested person*." The act of February 9th, 1843, requires "*two respectable witnesses*." The term "*respectable*," used in this last act, we understand to be equivalent to the phrase, "*credible disinterested*," as used in the act of 1835, and they are each synonymous with the word, "competent." To this last epithet, the law has affixed

a definite idea, and a respectable or disinterested witness, means a competent witness. Thus, the Statute of Frauds (29 Chas. II., c. 3, § 5,) requires a devise to be attested, and subscribed by three or four credible witnesses; and it has been always held, that the word credible, as used in this statute, means competent. Lord Cambden said, in Doe dem. Hindson *vs.* Kersey, (reported in 1 Day's Ca. in Err., 41,) "I understand the word credible to mean *worthy of credit;* when applied to the person of a witness, it bespeaks him to be a person *of capacity* to deserve credit: I say, *of capacity* to deserve credit, because no man can be sure of obtaining credit, let him be ever so credible."

All persons who are disinterested, and not infamous, are competent witnesses; and all are presumed to be competent, until the contrary appears. We understand, then, the act authorizing a change of venue to be imperative, whenever a case is made out in conformity to its requisitions, and that it is not left to the courts, when the requirements of the act are complied with, to grant or refuse the application, as a mere matter of discretion.

The next question presented by the record relates to the continuance. It is alleged, that a complete case is made out, by the affidavit of the defendant, and that the Criminal Court should have granted the continuance.

The granting of continuances is a matter of discretion in the court before which the case is tried; and though this Court has uniformly maintained the doctrine, that the unsound exercise of this discretion is a matter of error, it is equally well settled, that to authorize the interference of the appellate court, a plain and palpable case must be made out.

In this case, there had been one continuance, on the application of the defendant, and a second continuance was asked. The ground for delay was, the absence of a material witness. It will be seen, by reference to the affidavit, which sets forth the facts upon which the continuance is demanded, that the absent witness was expected to prove, that he was a member of the board of trustees of the town of New Franklin; that this corporation had made a contract with one W. T. Phillips, and by that contract constituted him an attorney in fact, with power to dispose of the lottery privilege granted to the corporation, by the acts of 1833 and 1835; that said Phillips had sold this privilege to certain persons named, and that the sum of fifteen thousand dollars had not been realized from the contract. It would seem, from the character of this testimony, that any other member of the board of trustees could have proved these facts, as easily as the absent witness; and we accordingly find, upon an examination of the language of the affidavit, that the defendant does not state, that the fact could not be proved by any other person whose attendance could have been procured, but that there was no other witness *in attendance* by whom he could establish these facts. Why was not a subpœna issued to some other member of this corporation? or, if the knowledge of this witness's absence was not ascertained until since the preceding continuance of the cause, (as alleged in the affidavit) why was no subpœna issued to this witness previous to that time? It appears, that a continuance for cause had been obtained at the preceding term. Whether that continuance was obtained in consequence of the absence of this same witness, does not directly appear; but it is inferrible, from the affidavit

upon which the application for the second continuance is based, that the first continuance was granted for some other cause. Why, then, was no effort made, previous to the time set for trial, to procure the attendance of this important and, it seems, only witness, or, at least, to have his deposition taken?

Another objection taken to the proceedings of the Criminal Court, is grounded on the action of that court, in permitting the circuit attorney to recall a witness, after the counsel for the defendant had closed his speech to the jury; and the case of Mary *vs.* The State (5 Mo. Rep.) is cited as an authority, condemnatory of the course of the Criminal Court in this particular. In that case, it appears, that an agreement was made between the counsel, upon the eve of an adjournment, that the jury might disperse until morning, on condition that the defendant should not examine any more witnesses, or re-examine those who had been examined. This was a capital case; and upon this ground, connected with the express agreement of the parties, the opinion of the Court, in that case, may safely rest. In the case of Rucker *vs.* Eddings, (6 Mo. Rep., p. —,) this Court said: "The law has entrusted courts with a discretion, in allowing the parties to a cause to obviate the effects of inadvertence, by the introduction of testimony out of its order. This discretion is to be exercised in furtherance of justice, and in a manner so as not to encourage the tampering with witnesses, to induce them to prop a cause whose weakness has been exposed. Where mere formal proof has been omitted, courts have allowed witnesses to be recalled, or documents to be produced, at any time before the jury retire, in order to supply it. So, material testimony ought not to be rejected, because offered after the evidence has closed on both sides, unless it has been kept back by trick, and the opposite party would be deceived, or injuriously affected by it. So, after a witness has been examined and cross-examined, the court may, in its discretion, permit either party to examine him again, even as to new matter, at any time during the trial." The same doctrine was reiterated in Brown *vs.* Burris, (8 Mo. Rep., p. 30,) and no reason occurs, why the rule should not be held applicable to criminal cases. The testimony given, in the present instance, was merely formal, and it is not seen how it could have injuriously affected the defendant.

In relation to the refusal of the court to grant a new trial, many of the points raised on this head will be passed over. As the judgment of the court must be reversed, on account of its refusal to grant a change of venue, it will be only necessary to notice such questions the decision of which may be important in another trial of this case.

The principal point made, in this branch of the case, is, whether proof of the sale of a quarter ticket will sustain the indictment, which charges, that the defendant sold a ticket. The ticket proved to be sold, read—"The holder of this ticket will be entitled to one-fourth of the prize drawn to its number." This was physically a ticket—not a part of a ticket. That its holder was entitled, if among the fortunate, to only one-fourth of the prize drawn by its corresponding number, does not make it less a ticket. It was complete in itself, and so purports to be. It is denominated on its face a ticket, though it appeared that the holder was only

entitled to a certain portion of the prize drawn to its number. The instruction, therefore, asked of the court on this subject, was properly refused.

The only point remaining to be considered is, the sufficiency of the indictment: to this, several objections are made.

1. It is contended that the lottery ticket should have been set out, either by its tenor or purport. It is attempted to be brought within the principle prevailing in indictments for forgery, for libel and for sending threatening letters. In these instances, it is well established, that the instrument itself must be set out. In the case of forgery, the instrument alleged to be forged must be set out, in order that the court may see whether it be such an instrument, the simulation of which would constitute the crime of forgery. In an indictment for sending threatening letters, the purport or tenor of the letter must be given, that the court may see whether it be of the character and description which comes within the prohibition of the statute, or such as the common law would punish. (Archbold's Crim. Plead.; 46.) The rule, however, does not prevail in larceny, because the reason of the rule does not apply. In indictments for larceny, for example, of a bank note, it is only necessary that the instrument be described as a specific thing, showing it to be the subject of larceny. (Archbold, 46.) So, in this case, the offence is created by statute, and the description of the thing, the sale of which is prohibited, is in the very language of the act. The precedents, to which we have been referred by the circuit attorney, of the forms of indictments, under a similar statute, in Massachusetts, furnish an authority on this point, corroborated by the decision of the Massachusetts court, in the case of Commonwealth *vs.* Clapp, 5 Pick. Rep.; Davis' Precedents, 162; Rev. Code, Mass., c.132, sec. 4.

2. It is also insisted, that, as the statutes prohibit the sale of lottery tickets, an indictment will not lie for selling a single ticket. To sustain this objection, the decisions in England, on the statute of 14 Geo. II., c.6, which makes it felony, without benefit of clergy, to steal any cow, ox, heifer, &c., are cited. It was held, under that statute, that where the indictment charged the defendant with stealing a cow, and the evidence proved it to be a heifer, the variance was fatal, because the use of both words in the statute proved that the legislature did not consider them synonymous. Several adjudications of a similar character have been made in England, and the courts of that country, *in favorem vitæ,* have countenanced some very nice distinctions. Admitting that our courts would be willing to adopt such refinements, in cases of misdemeanors, it is not perceived that this case falls within the class of cases to which we have alluded. Had the penalties of the British statute been directed against stealing cows, heifers, &c., and had it been adjudged that, under such a law, the stealing of one cow, or one heifer, was not an offence within its meaning, the precedent would have been apposite.

3. The last and principal objection to this indictment is, that the act of Assembly, of December 19, 1842, under which it is drawn, is unconstitutional. By the act of January 16, 1833, incorporating the town of New Franklin, among other powers vested in the board of trustees of said town, was the power, "to raise, by lottery, a sum of money, not exceeding fifteen thousand dollars, for the construc-

tion of a railroad, from the bank of the Missouri, to the town of New Franklin, aforesaid." By the 6th section of the act of February 26, 1835, the board of trustees of the said town were authorized to contract with any person to have said lottery drawn, in any part of the United States, on such terms as they might consider most advantageous, and were confirmed by the same privileges before enjoyed, as to the sale of tickets in this State, "*until the amount authorized in said act was raised.*" The act of December 19, 1842, repeals all laws authorizing the drawing of any lottery, and declares it shall not be lawful for any person or corporation, under any pretence whatsoever, to sell, exchange, or in any manner dispose of any lottery tickets, in any lottery, in this or any other State, territory or country; and imposes a heavy penalty on the offender.

We do not perceive any grounds upon which this act, standing by itself, or taken in connection with the two acts which preceded it, can be declared unconstitutional. In 1833, an act is passed, authorizing the corporation of New Franklin to raise fifteen thousand dollars, by selling lottery tickets. Ten years after the passage of this act, another law is passed, prohibiting the sale of lottery tickets within the State. Assuming, that the legislature could not resume the powers granted to the New Franklin corporation, until the franchise expired by its own limitation, yet, whether that power has ceased, according to the terms of the grant or not, depends on the matter *in pais*, about which there is no proof on this record. The general power of the legislature to pass such an act as the act of 1842, cannot be questioned; and if, in consequence of previous legislation, contracts have been made, and rights vested under these contracts, thereby claiming an exemption to the extent of such rights, from the operation of the act, such a state of facts must be shown. In courtesy to the legislature, the courts would hardly *presume* their acts to be violatory of the obligation of contracts: what proof is there on this record, which forbids the conclusion, that the sum of fifteen thousand dollars has been raised by the sale of the New Franklin Railroad Lottery tickets? or what proof is there, that this corporation has taken any steps to prevent the legislature from resuming this privilege, even before the sum has been raised, which was designated in their charter? If the legislature authorize a private individual, or a corporation, to raise a sum of money, by lottery, to effect an object of public concern, as a railroad, a bridge, or a canal, will it be contended, that the legislature may not, at any time, repeal the statute by which the authority is created? Such a course of legislation may be impolitic—it may be inequitable, but it is not therefore void. We are not aware of any cases in which the right of the legislature to repeal such laws has been questioned.

No case has gone further than to assert the principle, that where the legislature have passed a law, which amounts to a contract, in which individuals have a vested interest, the rights acquired, under such law, cannot be taken away, or impaired by subsequent legislation. An examination of this doctrine is not required by anything upon this record, and no opinion relative to this question is intended to be expressed.

The judgment of the Criminal Court is reversed, and the cause remanded.