Mr. Justice GRIER
 

 delivered the opinion of the court.
 

 It might admit of some doubt whether the act of 1829 grants any franchise, or constitutes any contract, either with the commissioners therein appointed, or with the turnpike corporation. It imposes certain duties on each. The com-; missioners are required to use the license thus given, not for their own benefit, but for a public purpose. The money procured by the proposed lotteries is to be paid over to the Fauquier and Alexandria Turnpike Road Company, to be by them expended
 
 “
 
 in the improvement and repair of the road.”
 

 It is true,^ that the corporation might receive greater benefits from the repair - of the road than the other citizens of the State; but the act imposed. no duty on them as a previous consideration. They are not required to make any repairs till they receive the money.
 

 But assuming that this would bé too narrow a construction of this act, and that it conferred a privilege or benefit on the corporation in the nature of a franchise or irrevocable contract, yet in its very nature it could not be considered illimitable as to time. On the contrary, the object for which the license was granted called for immediate action. “ Three miles ” of a great public thoroughfare are represented to be out of repair, and the company without immediate means to effect it. The sum to be raised being fixed and finite, and the subject of its application demanding immediate attention, the time within which the license is given cannot claim to be unlimited. And yet the commissioners and corporation have suffered eleven years to pass, before any attempt is made to perform the duty imposed on them, or avail themselves of the license or franchise conferred, and now claim a further term of twenty years, to raise the money and repair the road.
 

 
 *168
 
 When the Legislature of Virginia passed this most salutary act for the suppression of lotteries, they, with commendable caution, protected all vested rights. And notwithstanding the neglect to perform the duties imposed by the act of 1829, the act of 1834 does not revoke the grant or annul the license, but limits the time to six years within which the duties must be performed and the privilege exercised.
 

 It has been often decided by this court, that thé prohibition of the Constitution now under consideration, by which State legislatures are restrained from passing any “ law impairing the obligation of. contracts,” does not extend to all legislation about contracts. They may pass recording acts, by which an elder grantee shall be postponed to a younger, if the prior deed be not recorded within a limited time; and this, whether the deed be dated before or after the act. Acts of limitation also, giving peace and confidence to the actual possessor of the soil, and refusing the aid of courts of justice in the enforcement of contracts, after a certain time, have received the sanction of this court. Such’acts may be said to effect a complete divesture, or even transfer, of right, yet, as reasons of sound policy have led to their adoption, their validity cannot be questioned.
 

 What is the act under consideration, but a limitation of the time within which a certain privilege or license, limited in its very nature and purpose, may be exercised? If reasons of sound policy justify legislative interference with contracts of individuals, how much more will it justify the limitation of licenses so injurious to public morals.
 

 The suppression of nuisances injurious to public health or morality is among the most important duties of government. Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the wide-spread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community: it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple.
 

 It is a principle of the common law, that the king cannot sanction a nuisance. But, without asserting that a legislative license to raise money by lotteries cannot have the sanctity of a franchise or contract in its nature irrevocable, it cannot be denied that the limitation of such a license as the present is as much demanded by public policy, as other acts of limitation which have received the sanction of this court.
 

 There is, also, another view of this case, which concludes
 
 *169
 
 the plaintiff in error from the benefit of a defence under this clause of the Constitution, even if it were tenable. The act of 1829 had become obsolete by non-user.- Without further -legislation, the license granted by it could not be exercised. The plaintiff .in error cannot' claim a right to sell lottery-tickets without invoking the aid of the act of 11th March, 1834, passed a few days after the “ act suppressing lotteries.” -The courts of Virginia have very properly decided, that
 
 “
 
 this dormant right to draw the lottery which was revived by the act of March, 1834, must be taken as subordinate to, and limited by, the act of the 25th of the previous month; that those ■ statutes must be taken
 
 in pari
 
 materia, and receive the same construction as if embodied in one actthat there is nothing repugnant in the provisions of the one to those of the other, where the first is taken as limiting the time within which the right under the second is to be exercised.”
 

 This construction of their statutes by the courts of Virginia is not only just and correct, but is conclusive on this court and on the case, as it estops the plain
 
 tiff in
 
 error' from averring 1 against the constitutionality of the limitation under which he claims his privilege.
 

 The judgment of the General Court of Virginia is, therefore, affirmed, with costs.
 

 Order.
 

 This cause came on to be heard on the transcript of the record from the General Court of Virginia, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said General Court of Virginia in this cause be, and thé same is hereby, affirmed, with costs.