## JOHN ROBERTSON *v.* THE STATE.

1. LOCAL OPTION LAW — SELLING LIQUOR.— When prohibition has been declared in accordance with the Local Option Law, it operates a revocation of all licenses for the sale of intoxicating liquors within that locality, and a subsequent sale of such liquor therein, though made under an unexpired license granted before the prohibition, is a violation of the Local Option Law. (Hurt, J., dissents.)

2. SAME — REPEAL.— Section 3 of the act adopting the Revised Codes operated a repeal of section 5 of the original Local Option Act of 1876, and the act of 1879 purporting to amend the latter act was nugatory by reason of the repeal of said act of 1876.

3. SAME — PENALTY.— The punishment for a violation of the Local Option Law is by fine only, as prescribed by article 378 of the Revised Penal Code. The act of 1879, which purported to authorize the penalty of imprisonment, is not in force.

4. REPEAL.— An enactment which purports merely to amend a repealed act is of no effect.

APPEAL from the County Court of Fannin. Tried below before the Hon. T. B. Cox, County Judge.

The case is disclosed in the opinion of the court. Appellant waived a jury in the court below and submitted the facts as well as the law to the judge, who found him guilty and adjudged his punishment at imprisonment in the county jail for ten days.

*Hare & Head,* and *Labatt & Noble,* for the appellant: Where a valuable consideration is paid for the right to pursue a certain business for a specified time, can such right, under the Constitution and laws of Texas, be annulled before the expiration of the time paid for?

Strike from this question the provision of our Constitution authorizing the Legislature to pass a law taxing a business occupation, and commanding the Legislature to pass a Local Option Law, and place it upon the same grounds on which it has been decided in other States, viz., on statutory law alone, and we have a question on

which the highest authorities in the different States apparently disagree. Add the constitutional provisions above named, and construe the same with the statutory laws of our State passed in pursuance and by authority thereof, and add common honesty, and we see no difficulty in arriving at a conclusion which will enforce each law and do justice to the citizen.

Under the decisions of many States, made under statutory laws, a valuable consideration paid for the right or privilege of pursuing a certain occupation is declared to be a contract, a grant, a license, a privilege, a permit. Those States which have held it to be a contract or a grant have held it irrevocable. Some States that have held it a mere license for which a valuable consideration was paid, have in like manner held it irrevocable. Some that have held it a license, privilege or permit obtained with a valuable consideration have declared it revocable. All agree that if it was a license, a privilege or a permit without consideration it could be revoked or annulled at any time.

It will be found that a review of the different decisions and authorities upon this question where founded in and based upon statutory laws are in the main antagonistic and exceedingly unsatisfactory. If, however, we lay aside these opinions of judges and law writers, and take our Constitution and our statutes, and give the framers of the Constitution and the laws credit for common honesty, and then construe all in the spirit of common honesty, we do not think there is much trouble.

Let us first consider the Constitution on each branch, and construe it; then the statutes following each organic act; then construe all together under the common law rules, as provided by statute shall be done. Penal Code, article 4.

The Legislature may impose an occupation tax on any business in this State. Constitution, article 8, section 1.

"Every law is to be construed according to the plain import of the language in which it is written."

The construction we place upon this extract from the Constitution is: That it was optionary with the Legislature to tax business occupations; but, should it be done, the act so passed becomes the law and has the sanction of the Constitution. That this clause in the Constitution and the statutory law passed by authority thereof were to operate on business occupations; and when the citizen (natural or artificial) complied with the law, he had the promise of the organic and statutory law that he should be protected in such business for the time for which he paid. In the absence of any constitutional or statutory provision that would or does conflict with the provision we have cited, we submit that this construction is substantially correct.

"The Legislature shall enact a law whereby the voters, etc., may determine whether the sale of intoxicating liquors shall be prohibited," etc. Constitution, article 16, section 20. We construe this clause to be mandatory on the Legislature, and that, when they do enact such law, it confers a privilege on the citizens named. They may vote for prohibition or against it, or not at all. But when a majority do vote in the manner pointed out by statute, then it becomes a law as to such locality enacted by a majority vote, and has the same force and effect as though enacted directly by the Legislature. The question of whether such power can or cannot be delegated is eliminated from the discussion because it is authorized by the Constitution. That is, the voters themselves enact the law for their own observance instead of the Legislature doing it for them. The difference then is, that the Legislature enacts the law taxing occupations; the voters enact the law prohibiting the sale of liquors. And although the Constitution is directory in one and mandatory in the other, and one is enacted by the Legis-

lature and the other by the voters, yet when in each' case a law is enacted they are of precisely equal authority; both are laws based upon and growing out of the Constitution, and both must be obeyed. It follows as a logical and necessary consequence of these two propositions, that the person who pays for his business is protected by the Constitution and statute in such business, and the neighborhood which votes prohibition is authorized to enforce the law so enacted.

Is there any conflict in the practical operation of these two clauses? Not necessarily. Such conflict may or may not occur. For prohibition may be enacted where no one is pursuing a business obnoxious thereto, or a business that might be obnoxious may be pursued where it is never enacted. It also follows that, where the price is paid for running such business, it is legal and constitutional. For, if prohibition had been enacted and were in force, such license could not be issued by the officer who might be authorized so to do. And that if the business is prohibited, it is a prohibition that goes into effect and makes the business criminal after a legal permit therefor for a given time. It also follows that a person pursuing such occupation can no more know that he will be prohibited than he can know what laws the Legislature are going to enact. For the Legislature within constitutional limits can pass laws, civil and criminal. So the voters can vote or enact prohibition. But when such enactment will be made, or whether at all, no man can know; and no man is chargeable with a knowledge of that which does not exist.

In the practical operation of these two clauses, can a conflict arise? Yes; if after such tax is paid the voters enact prohibition, and the time for which such tax is paid has not expired, there is a conflict. Shall the prohibitory enactment operate so as to annul the time for which such is paid, or shall it be suspended as to such

person and operate on all others who have not paid a tax
for pursuing such business? If it annuls, at once there
is a conflict; if not, there is none. And whether it does
or does not is the subject of judicial construction of con-
stitutional law.

When the Constitution authorized the Legislature to
impose a tax on business, it necessarily carried with it
the power in the Legislature to prescribe a time; for it
takes time to transact business. The Legislature fixed
the period at twelve months. Hence when the right to
pursue such business was paid for, the person so paying
had the guaranty of the statute and the Constitution that
he might lawfully pursue such occupation, and would be
protected therein for the period stated; and the time
stated was as binding as any other of the rights conferred.

The Constitution gave the Legislature the unqualified
power to tax, etc. The license to pursue such business
is a necessary ingredient of the law to be passed. Noth-
ing is said about limit, or authority or power to revoke;
and the only limitation is in the statute, and that is as to
time. The two clauses of the Constitution are separate
and distinct. In no manner do they refer to each other.
The tax clause does not authorize the Legislature to an-
nul or revoke the right granted, nor in any manner to
prohibit such business for the period they have author-
ized; nor to make any act penal done in pursuing such
business.

The prohibitory clause gives the power to prohibit, but
does not in express terms declare that the rights already
granted shall be annulled, revoked or made penal as to
such particular person.

Hence, if it was the intention of the framers of the
Constitution that the prohibitory clause should annul the
right granted under the tax act, then such intention
would be a construction by implication and not by the
express words used in the prohibitory clause.

Both of these clauses being separate and distinct, shall one be held operative and the other inoperative, or shall such construction be given as will make both operative and do justice to every citizen affected by either? The principles of common honesty and justice would seem to demand the latter course if legitimate rules of construction will permit it. Is there authority for it?

"The Legislature is ever at hand to explain its meaning; there are no regular convocations of the people to revise or consider the fundamental law. So that it is apparent that the arguments of hardship, injustice, etc., will address themselves to the judiciary in constitutional cases with more force than in regard to ordinary legislative acts, just in proportion as it is more difficult to revise a constitution than it is a statute." Sedgwick on Constitutional and Statutory Law, 417.

"Constitutions and statutes must be interpreted by the language used, and words are to be taken in their common acceptations. Contemporaneous acts and legislative expositions may be resorted to, to remove and explain ambiguities." Id. 412 et seq.

"If possible, such a construction is to be made as will avoid any contradiction or inconsistency. Every part is to be construed together and all made consistent and harmonious, if possible. Though by so doing we may restrict the meaning or application of general words." Id. 200 et seq.; 2d Mich. Rep. 138; Com. v. Duncan, 1 Binn. (Pa.) 601.

"The real intention will prevail over the literal sense of terms; and the reason and intention of the law will control the strict letter where the latter would lead to palpable injustice. The intention is to be taken or presumed according to what is consonant to reason and good discretion." 1 Kent, 462.

Several acts in pari materia, and relating to the same subject, are to be taken together and compared in the

construction of them, and, if possible, force and effect are to be given to each part. Id. 463; Cooley on Const. Limitations, 57. The rule is that effect is to be given, if possible, to the whole instrument, and to every section and clause. Cooley Const. Lim. 58. One part is not to be allowed to defeat another if by any reasonable construction the two can be made to stand together. Id. 58.

We have shown by the highest common law authorities that full effect is to be given to all and each part of a constitution. We now refer to our own Supreme and Appellate Court on that subject.

"A constitution is not to receive a technical construction like a common law instrument or a statute. It is to be interpreted so as to carry out the great principles of government, *not* to defeat them." *Hunt* v. *State*, 7 Texas Ct. App. 212.

"The written and positive law is to be construed so as to be rendered operative, and so that all the provisions on the same subject shall harmonize if reasonably and justly they may. And so that the most reasonable, just and practicable effect and scope shall be given to each." *Stockton* v. *Montgomery*, Dallam, 473.

The rule that effect is to be given, if possible, to the whole instrument and to every section and clause is applicable. *Lastro* v. *State*, 3 Texas Ct. App. 363.

"The intention of the convention to annul perfect rights will not be assumed, but must be embodied in express terms, or the reverse of unavoidable implication." *Warren* v. *Shuman*, 5 Texas, 457.

"The reasonable intent will control the strict letter when such strict letter would lead to palpable injustice. And the reason and intention is to be presumed according to what is consonant to reason and good discretion." 12 Texas, 402.

It is an acknowledged rule in construing a statute that effect must be given to every part, if possible. And if

definite meanings cannot be given to indefinite sections they shall not be construed to destroy a previous section. 1 Texas, 492.

"The two acts went into effect on the same day. If it can be done, we are bound to construe in such a way as to sustain both." 17 Texas, 596.

Where an act of the State Legislature conferred upon an association the privilege of setting up and carrying on a lottery for one year, upon payment of a certain sum into the State treasury, a repeal of the act after such payment cannot take away the privilege for the time such payment was made. *Boyd* v. *State*, 46 Ala. 329.

A repeal of a license law will not affect the validity of licenses under it for the unexpired term. *State* v. *Andrews*, 28 Mo. 14; *State* v. *Phalen*, 3 Harring. (Delaware) 441.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J.   The defendant is prosecuted by information for a violation of the law known as the "Local Option Law." He was convicted, and his punishment assessed at ten days' imprisonment in the county jail. The defendant was a retail liquor dealer, and as such had paid for and obtained his license. While his license was in force, the sale of intoxicating liquors was prohibited, under the provisions of the Local Option Law, in the precinct in which the defendant was doing business. He disregarded this prohibition, and continued to sell under his occupation license.

The principal question discussed by counsel for the defendant is whether or not the prohibition of the sale of intoxicating liquors under the "Local Option Act" could and did revoke the occupation license of defendant, so as to render him amenable to the penalty denounced against those who should sell intoxicating liquors within the

limits of the district in which prohibition had been established. This question has been very exhaustively and ably discussed by defendant's counsel, and the proposition is contended for, and earnestly insisted upon, that the defendant, having purchased an occupation license to sell intoxicating liquors for the period of twelve months, and having paid the tax therefor, the State has no power by law to revoke the license, and that if it has such power, it can only be exercised in a direct manner, by a statutory enactment expressly revoking the license.

The question is one of much interest and of grave importance, and we regret that we have not been able, for want of time, to give to it a more searching and thorough examination. The authorities bearing upon it are conflicting, and the question is still an open one.

We are of the opinion that the Legislature has full control of the subject, and can revoke occupation licenses at pleasure, and that the weight of authority sustains this proposition. We have not the time to spare from other pressing business demanding our attention to enter upon an extended discussion of the positions assumed, and so ably argued by defendant's counsel in their brief. We must content ourselves by citing the authorities upon which we rely to support the view we entertain. They are as follows: Cooley's Const. Lim. 345, and note 2; *Buck Pres. Church* v. *Mayor, etc.* 5 Cow. 538; *Vanderbilt* v. *Adams,* 7 Cow. 349; *State* v. *Sterling,* 8 Mo. 697; *Hirn* v. *State,* 1 Ohio, N. S. 15; *Calder* v. *Kurby,* 5 Gray, 597; *Brimmer* v. *Boston,* 102 Mass. 19; *State* v. *Stirling,* 8 Mo. 697; *Board of Excise* v. *Barry,* 34 N. Y. 657; *Phelan* v. *Virginia,* 8 How. 163; *Baltimore* v. *Clunet,* 23 Md. 449; *Fell* v. *State,* 42 Md. 71; *Com.* v. *Brennan,* 103 Mass. 70; *Fuleigh* v. *State,* 8 Mo. 606; *Toledo R. R. Co.* v. *Jacksonville,* 67 Ill. 37; *People* v. *Commissioners,* 59 N. Y. 92.

We hold that whenever prohibition is declared in accordance with the Local Option Law, in any locality,

it has the effect to revoke and render null all licenses for the sale of intoxicating liquors within that locality, and that whoever sells intoxicating liquors within that locality violates the law, notwithstanding he may sell under a license to do so, granted prior to the adoption of prohibition.

There is another question arising in this case, however, which, because of the view we take of it, will require us to reverse the judgment. The punishment assessed against the defendant was ten days' imprisonment in the county jail. This punishment was undoubtedly assessed under authority of an act of the Legislature approved April 17, 1879, and which took effect ninety days after the adjournment of that session of the Legislature. The act is entitled "An act amendatory of an act entitled 'An act to prohibit the sale, exchange or gift of intoxicating liquors in any county, justice's precinct, city or town in this State, that may so elect, prescribing the mode of election and affixing a punishment for its violation,' approved June 24, 1876." The Legislature which enacted this law adjourned on the 24th day of April, 1879, and hence this act took effect, if it ever did take effect, ninety days from that date.

The second section of this act prescribes the punishment for a violation of the "Local Option Law" to be by fine and imprisonment in jail. (Gen. Laws 16th Leg. chap. 90, sec. 2, p. 100.) This act is amendatory of the act of June 24, 1876, which was the original "Local Option Act." Art. 378 of the Penal Code prescribed the punishment for a violation of the "Local Option Law" to be by fine only.

The Penal Code took effect on the 24th July, 1879, the same day on which the act of April 17, 1879, above cited, took effect. The 3d section of the act adopting the Penal Code and the Code of Criminal Procedure provides "That all penal laws and all laws relating to criminal procedure

in this State that are not embraced in this act, and that have not been enacted during the present session of this Legislature, be and the same are hereby repealed." This provision, therefore, repealed section 5 of the act of June 24, 1876. The act of 24th July, 1879, was only amendatory of the act of June 24, 1876, and when the amendment took effect, the act amended was no longer a law because it had been repealed by the act adopting the Codes above quoted; and hence the amendatory act had nothing to support it. A repealed law is not the subject of amendment. It is true that the repealing act and the amending act both took effect on the same day. The effect of this is, in our opinion, to make nugatory the amending act. It being a part of the repealed act, it cannot exist without it, but must pass away with it. We therefore hold that art. 378 of the Penal Code is the law which prescribes the punishment for this offense, and that it was error in the court to assess imprisonment as the punishment; and because of this error the judgment is reversed and the cause is remanded.

HURT, J. I concur in reversing the judgment in this case. But I do not concur in the opinion in so far as it holds that the operation of the Local Option Act, when adopted in a locality, has the effect to revoke licenses previously granted. I hold that an act of the Legislature cannot have this effect unless it contains an express provision revoking such licenses.

*Reversed and remanded*