UNITED STATES v. FULKERSON et al.

(District Court, S. D. California. May 18, 1896.)

No. 815.

1. INDICTMENT—MAILING LETTER CONCERNING LOTTERY—REV. ST. § 3894.

An allegation in an indictment under Rev. St. § 3894, for depositing in the post office a letter concerning a lottery, that the defendant knowingly deposited "a certain letter concerning a certain lottery conducted by a corporation called," etc., sufficiently shows, assuming such showing to be required by the statute, that the letter concerned a lottery existing at the time the letter was mailed.

2. SAME.

Such an indictment need not allege specifically facts showing the enterprise to be a lottery. A general averment to that effect is sufficient.

3. SAME.

Nor need such an indictment allege that the letter deposited in the post office was in aid of a lottery, since the statute does not require this as an element of the crime, but only that the letter should have been concerning a lottery.

4. SAME.

It is not necessary that documents set out in such an indictment, and alleged to have been deposited in the post office, should show, upon their face, that they concern a lottery; nor are documents so set out repugnant to the allegation that they concern a lottery because they do not show that fact on their face.

5. SAME.

When such an indictment declares the scheme in question to be a lottery, without giving the details thereof, or describing its plan, such allegation must, for the purposes of a demurrer, be taken as true; and the objection that such scheme is not a lottery, because the only element of chance therein relates to time of payment, cannot arise.

Geo. J. Dennis, U. S. Atty., and Frank G. Finlayson, Asst. U. S. Atty.

H. A. Pierce, for defendants.

WELLBORN, District Judge. This is a prosecution for a violation of section 3894, as amended, of the Revised Statutes of the United States (1 Supp. Rev. St. p. 803). The indictment contains two counts. The first count alleges that defendants, on November 9, 1895, "did knowingly deposit, and cause to be deposited," in the post office at the city of Los Angeles, Cal., "a certain envelope, * * * which said envelope then and there contained a certain letter concerning a certain lottery conducted by a corporation called the Interstate Mutual Investment Company of Los Angeles, California;" and then sets forth a copy of the letter. Similar allegations are also made with reference to a receipt and a printed circular; copies of the receipt and circular following said allegations, respectively. The second count is substantially the same as the first, except that the allegation of the nonmailable character of the documents set forth in said count is that said documents concerned "an enterprise offering prizes depending upon lot or chance, conducted by a corporation called the Interstate Mutual Investment Company, of Los Angeles, California;" and, also, except that the documents set forth in the second count are different

from those contained in the first count. Under their demurrer, defendants make the following objections to said indictment: First, that the indictment does not show when the lottery therein referred to existed, nor does it adequately allege the existence of such lottery; second, that the indictment does not show that the matter alleged to have been deposited in the mail was for the purpose of promoting a lottery; third, that the documents set out in the indictment do not show upon their faces that they concern a lottery, and are therefore repugnant to the allegation that they do concern a lottery; fourth, that the only element of defendants' business which depends upon chance is the determination of the time of payment, and this element of chance does not make said business a lottery. These objections I shall notice in the order of their statement.

1. The allegation of the indictment which the first objection challenges is that the defendants knowingly deposited in the post office "a certain letter concerning a certain lottery conducted by a corporation called the Interstate Mutual Investment Company, of Los Angeles, California." This language, fairly construed, I think, must be held to mean that the letter concerned a lottery existing at the time the letter was mailed. The allegation could be made more definite on this point, but a fair construction of it, I think, is as above stated. Besides, assuming that the documents set forth in the indictment do concern a lottery, they show upon their faces that it was a then existing concern. I do not mean to hold that the section requires the lottery to be in existence at the time the prohibited matter is mailed, but simply that, if such be the law, the present case is fully within the requirement. The indictment need not allege specifically facts showing the enterprise to be a lottery. A general averment to that effect is sufficient. State v. Follet, 6 N. H. 53; Com. v. Horton, 2 Gray, 69; Freleigh v. State, 8 Mo. 606; France v. State, 6 Baxt. 478.

2. The second objection, that the indictment fails to allege that the matter deposited in the post office was in aid of a lottery, is, in my opinion, untenable. I cannot ascribe to the word "concerning," employed in section 3894 of the Revised Statutes, the significance contended for by the defendant, but think it should be taken in its ordinary meaning. Thus accepted, the word signifies "pertaining to"; "having relation to." Nor does it conflict with this interpretation to concede that a letter "pertaining to," or "having relation to," a lottery, might, under some circumstances, be deposited in the mail, and yet no crime be thereby committed. Such circumstances, however, would simply constitute a case manifestly outside of the intent of congress, as shown in the section, and which, therefore, the courts would hold to be exceptional. This has been aptly illustrated by Judge Phillips in U. S. v. Harmon, 45 Fed. 414, and I quote at some length from his opinion, as follows:

"We are next confronted with the principal contention of the defendant, that the act—the thing done by him—is wanting in the criminal intent which, as he contends, qualifies every criminal offense, especially one rising to the

degree of a felony. The argument is that, if the offense in question is completed by the mere overt act of knowingly placing in the post office an obscene print, publication, etc., it would subject to indictment and punishment the judge of this circuit for sending the indictment herein containing the forbidden publication, sent him through the mail by mistake, back to the clerk of the court through the mails, or that such a publication made in a law book, as a report of this case, would subject the publisher to the penalty of the law for mailing it to his subscribers; that, as the overt act of the judge, for instance, can only be exonerated in law by proof of the absence of criminal intent, the rule of exception must be indifferently applied, so that in every case the question of intent, motive, purpose, must be open to inquiry, and, if there was no evil design,—no animus mali,—the jury should be directed to acquit. The deduction from this particularization has for its postulate a radical misconception of the postal organization, and the scope and policy of the law touching obscene literature. The government is authorized, not commanded, by the constitution to maintain post offices and post roads. The system is organized and maintained by the government on the public responsibility, solely for the purpose of promoting the public welfare, in facilitating business, commercial, and social intercourse. It is designed to aid legitimate business, and not such as is calculated directly to corrupt the public morals, and sap the foundations of society and government. Having the right to establish or disestablish post offices and post roads, just as the public interests may require, congress may say to what extent the public or any individual may use them, and for what purpose, and may therefore limit both the quantity and the quality of the matter sent through the mails. The public officer, like a judge, who commits to the mails an indictment containing the vicious publication in question, in the performance of an official duty connected therewith, and in the administration of public justice, is employing the mails, within the purview of the object of the constitution. Such a user must, ex necessitate rei, be held by the courts to be the exception to the letter of the statute arising from necessary implication, as much so as in the case of the Bolognian law, which enacted 'that whoever drew blood in the streets should be punished with the utmost severity.' It was held not to apply to the surgeon who opened a vein of a person in order to save his life, when he had fallen in the street in a fit."

My opinion is that the section does not require, as an element of the crime which it denounces, that the prohibited matter should have been mailed in aid of the lottery, and, therefore, the averment of that specific intent is unnecessary. Bish. St. Crimes, § 360; U. S. v. Lynch, 49 Fed. 851. In the case last cited, Judge Ross says:

"The words of the statute themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished; and, that being so, an indictment that charges the offense in the language of the statute is sufficient."

It is only where the statute does not expressly and directly set forth all the elements constituting the offense that the employment in the indictment of the words of the statute is insufficient. If, however, it were conceded that the statute does impliedly require a specific intent to promote a lottery, still the indictment would not be open to objection in this respect, because the papers therein set out show on their faces, and unquestionably, that they were intended to promote the enterprise to which they relate.

3. In support of the objection that the documents set out in the indictment are repugnant to the allegations characterizing them, defendants cite the case of U. S. v. Grimm, 45 Fed. 558. The rule enunciated in that case cannot apply here, and its inapplicability

is so clearly demonstrated in the government's brief filed in the present case, that I quote therefrom the following extract:

"The postal cards set forth in case No. 816 are not requgnant to the allegation that they 'concern' a lottery, and the indictment is not within the rule in the Grimm Case, 45 Fed. 558. The indictment in the Grimm Case was drawn under an act which makes it an offense to mail any letter, etc., giving information where, how, or by whom an obscene, lewd, or lascivious picture may be obtained. Under that act, the letter must give information or notice. Here, however, the crime is complete if the letter, circular, etc., concerns a lottery. It is not necessary that the letter should, on its face, give any information or notice about the lottery, or where lottery tickets, for example, may be purchased. It is sufficient if the letter or circular merely concerns —that is, relates to,—a lottery. Now, it may well be that, if a statute makes it an offense to mail any letter giving certain notice, the indictment is uncertain if such letter, as set forth in hæc verba, does not on its face appear to give such notice or information. In such case there is an apparent repugnancy between the letter and the allegation that it does in fact give such notice, and such apparent repugnancy can only be removed by a further averment of the circumstances under which the letter was written, as by setting forth the letter, if any, in reply to which it was written. But the case is wholly different where the offense is complete if the mail matter merely concerns the unlawful occupation. There are so many thousands of ways in which a letter or postal card may concern a lottery, that there is no apparent repugnancy between the allegation that a postal card concerns a lottery, and the contents of such postal card, even though such a postal card should merely purport to be a receipt for money paid. In the one case, the letter cannot give the alleged information, unless it does so upon its face, either when read alone by itself, or in connection with other letters with which it is connected; and, therefore, there is an apparent repugnancy between the allegation that the letter does, in fact, give such information, and the letter itself, unless the letter does, on its face, show that it gives the alleged information, or the circumstances necessary thereto are set forth in conjunction with the letter. Whereas, a letter may 'concern' a picture or a lottery, even though it does not appear to do so upon its face, either when read by itself, or when read in conjunction with any other letter or letters. In the one case, something—viz. information—emanates from the letter itself. In the other case, nothing emanates from the letter itself. Its connection with the lottery may be wholly external. It is for this reason that the indictment need not show how the letter or circular concerns the lottery."

4. The indictment does not purport to give the details, or describe the plan, of the alleged lottery, and, therefore, the objection that the scheme is not a lottery, because its only element of chance relates exclusively to time of payment, cannot arise on demurrer; but the allegation of the indictment, declaring the scheme to be a lottery, must, for the purposes of the demurrer, be taken as true.

The demurrer is overruled.