**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael J. STUEBBEN,**
**Defendant-Appellant.**

**No. 85–3713.**

United States Court of Appeals,
Fifth Circuit.

Sept. 10, 1986.

---

**19.** *Cf. Benton Casing Service, Inc. v. Avemco Ins.*, 379 So.2d 225 (La.1979).

**20.** 649 F.2d 331 (5th Cir.1981).

**22.** La.Rev.Stat.Ann. § 22:655.

John H. Craft, New Orleans, La., for defendant-appellant.

Rene C. McGinty, Asst. U.S. Atty., John P. Volz, C. Renee Clark, U.S. Atty., Joseph I. Giarusso, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before GEE and HILL, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

Appellant Stuebben was tried for transporting lottery paraphernalia in interstate commerce in violation of 18 U.S.C. § 1301 and 18 U.S.C. § 1953. Convicted on all counts, he now appeals, advancing two arguments, one statutory and the other constitutional. Disagreeing with his contention that his activity falls within an exception to § 1953's coverage, we hold that he may properly be convicted under that statute. We also reject the constitutional challenge; even though lotteries are no longer condemned as an evil to society, these statutes do not violate Stuebben's right to substantive due process. Accordingly, we affirm his convictions.

Nearly all the facts of this case are undisputed. Stuebben ran a Louisiana company in the business of purchasing Illinois State Lottery tickets for his customers. He provided to various New Orleans restaurants, bars, and newstands lottery betting slips. Patrons of these establishments wishing to participate filled in the slips, indicating the numbers they selected. They then gave the completed forms, along with cash in the amount of the price of a lottery ticket plus Stuebben's fee of 50 percent of the ticket price, to designated employees of the establishments. Stuebben later picked up the forms and the money from these cooperating employees, placed the collected materials in envelopes, and delivered them to Chicago. In the beginning, he would fly to Chicago, where he would then call a favorite taxicab driver named Steve Almaseri to drive him to various Chicago locations selling lottery tickets. At these locations, he would purchase the tickets, picking the numbers his customers had requested. Later on, he abandoned this method; instead, he would send the forms to Almaseri by parcel shipping. Almaseri would pick them up, make the purchases, then send the tickets to Stuebben. Under either method, upon the tickets' arrival in New Orleans, Stuebben distributed them to everyone who had placed an order. On Saturday nights, all could get the lottery results by watching a Chicago station carried by New Orleans cable television.

Stuebben achieved great notoriety in the local media for this venture; unfortunately for him, the Federal Bureau of Investigation was watching too: following a period of surveillance, the F.B.I. arrested Stuebben in May 1985. A six-count indictment

---

* District Judge of the Western District of Louisiana, sitting by designation.

soon followed. Counts one, two, and three charged that Stuebben violated 18 U.S.C. § 1301[1] by receiving lottery tickets from Chicago on three different dates. Counts four, five, and six charged that violations of 18 U.S.C. § 1953[2] occurred when Stuebben used interstate commerce three times to transport the betting slips to Chicago. With the jury returning guilty verdicts on all six counts, the trial court sentenced him to one year for each of the first three counts, sentences to run concurrently; for each of the last three counts, he received three years supervised probation beginning after the prison term, sentences to run concurrently. Stuebben now appeals these convictions.

■ On appeal, he raises both statutory and constitutional arguments. Federal courts, if they can, should resolve cases on non-constitutional grounds. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., dissenting in part). In this spirit, we first look to Stuebben's statutory argument. He contends that he cannot be convicted for violating 18 U.S.C. § 1953 because his activity falls within the list of exceptions set forth in § 1953(b). At first glance, this subsection might appear to exclude from § 1953's coverage the transportation of betting forms to a state where a lottery is legal:

(b) This section shall not apply to ... (4) equipment, tickets, or materials used or designed for use within a State in a lot-

tery conducted by that State under authority of state law....

[2] The statute's legislative history, however, makes clear that this is not the case. In 1975, Congress amended § 1953(b) by adding paragraph (4). This amendment was part of legislation seeking to relieve states operating lotteries from the restrictions federal law then imposed. Specifically, the new law allowed the use of the mail, radio, and television within a state holding a lottery to provide information about that lottery. Then-existing restrictions were lifted, however, only to the extent necessary for *intrastate* publicity. This is shown in the House Report's enunciation of the purpose behind the legislation:

The purpose of the proposed legislation, as amended, is to amend existing provisions of law so as to permit the broadcasting of advertising, lists of prizes, or information concerning a State conducted lottery by a radio or television station licensed to a location in a State conducting a lottery under the authority of State law. The bill would similarly permit the mailing of newspapers published in the State containing advertisements, lists of prizes or information concerning a State conducted lottery. Under a separate subsection, the transportation or mailing of tickets and other materials concerning a State conducted lottery within the State to addresses within the State would be permitted.

---

1. This statute provides the following:
   Whoever brings into the United States for the purpose of disposing of the same, or knowingly deposits with any express company or other common carrier for carriage, or carries in interstate or foreign commerce any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; or knowingly takes or receives any such paper, certificate, instrument, advertisement, or list so brought, deposited,

or transported, shall be fined not more than $1,000 or imprisoned not more than two years, or both.

2. This statute provides in part:
   (a) Whoever, except a common carrier in the usual course of its business, knowingly carries or sends in interstate or foreign commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in a (a) bookmaking; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game shall be fined not more than $10,000 or imprisoned for not more than five years or both.

H.R.Rep. No. 1517, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7007, 7009. In congressional hearings, Justice Department witnesses voiced no opposition to this relaxing of federal law if certain conditions were met:

> (1) the lottery activity is either (a) wholly within one state, or (b) between two states each of which conducts a lottery; and
>
> (2) the lottery in every instance is conducted by a state agency acting under authority of law.

*Id.* at 7011. In explaining this view, the Justice Department informed the House what the amendments should not allow:

> ... [T]he Department would not favor any change in the law which would have the effect of opening up the channels of commerce to individuals who would seize upon the existence of a State authorized lottery to "commercialize the process." It was explained that this meant that the Department didn't want it to be possible for criminals to engage in interstate traffic of lottery tickets.

*Id.* The Congress agreed by making the amendments even more restrictive than the Justice Department had urged; it rejected any softening of restrictions for traffic in such materials between states that authorize lotteries. *Id.* at 7012. Instead, the 1975 legislation allows the use of radio, television, and the mail for "the transportation, mailing, and broadcasting of advertising, information, and materials concerning" a lottery alone within the state authorizing that lottery. As the House Report declared, "[t]he Committee desires to emphasize that the bill would not dilute the ability of the Federal Government to move strongly against illegal lotteries with interstate ramifications." *Id.* Had Stuebben mailed the betting forms from Peoria to Chicago, § 1953(b)(4) would apply. Transportation of these betting forms between states, however, remains a crime under § 1953(a).

We must therefore address Stuebben's constitutional argument. Specifically, he argues that any conviction under 18 U.S.C. § 1301 and 18 U.S.C. § 1953 violates his right of substantive due process because these statutes no longer protect any legitimate governmental interest. A historical look at such laws is necessary to understand his claim. In the late 19th century, Congress enacted legislation prohibiting the interstate transportation of lottery tickets. The constitutionality of this legislation was first challenged in *Champion v. Ames,* 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (1903). The challenge was unsuccessful; the Supreme Court held that the commerce clause empowers Congress to prohibit lottery tickets for interstate commerce. In so holding, Justice Harlan made clear the then-prevailing view of lotteries:

> In *Phalen v. Virginia,* 49 U.S. 163, 168, 8 How. 163, 168, 12 L.Ed. 1030 after observing that the supression of nuisances injurious to public health or morality is among the most important duties of Government, this Court said: "Experience has shown that the common forms of gambling are comparatively innocuous when placed in contrast with the widespread pestilence of lotteries. The former are confined to a few persons and places, but the latter infests the whole community; it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple."
>
> \*   \*   \*   \*   \*   \*
>
> We should hesitate long before adjudging that an evil of such appalling character carried on through interstate commerce, cannot be met and crushed by the only power competent to that end. We say competent to that end, because Congress alone has the power to occupy, by legislation, the whole field of interstate commerce. *Id.* at 356 & 357–58, 23 S.Ct. at 327.

Attitudes have changed greatly since 1903. Today, many people do not see lotteries as "an evil of such appalling character." To the contrary, twenty-two states and the District of Columbia now operate lotteries. Some of the other states, encountering fiscal hardships, are now considering lotteries as a way to increase reve-

nues. Because of changing times, Stuebben argues, 18 U.S.C. § 1301 and the application of 18 U.S.C. § 1953 to prevent interstate transportation of lottery materials no longer serve a legitimate governmental interest. This being so, he continues, a conviction for violating these statutes denies him substantive due process.

In *United States v. Coastal States Crude Gathering Co.*, 643 F.2d 1125, 1127–28 (5th Cir.), *cert. denied*, 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981), we reiterated the principle of *Nebbia v. New York*, 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934): to satisfy due process, the legislative means must bear "a reasonable relation to a proper legislative purpose" and be "neither arbitrary nor discriminatory." Under this standard, the laws pass constitutional muster. While state lotteries have achieved some public acceptance, this alone does not render the purpose of the statutes improper. Regulating or prohibiting forms of gambling is still a well-recognized governmental prerogative. A state legislature retains authority to exercise this prerogative by banning a lottery within its state borders, should it so wish, while *Champion* makes clear the power of Congress to prohibit any gambling-related activity that touches upon interstate commerce. Changing times do not empower federal courts to overturn such legislation—certainly not absent signs of arbitrariness or discriminatory intent. We see no such signs, and we refuse to rule these statutes unconstitutional. Citizens opposing their continued vitality should seek redress from Congress; if the American public's attitudes have indeed changed sufficiently, repealing the law is the proper method of bringing the United States Code into harmony with them. Stuebben's convictions are therefore AFFIRMED.

