108 N.J. Super. 51 (1969)
259 A.2d 920
MARY ANN PINEIRO AND CARMEN OLGA FAJARDO, PLAINTIFFS-APPELLANTS,
v.
CARMEN NIEVES, INDIVIDUALLY AND KNOWN AS CARMEN NIEVES FAMILY, ALSO KNOWN AS CARMEN NIEVES AND FAMILY, ALSO KNOWN AS NIEVESY-CARMEN FAMILY, RUBEN NIEVES, GIL RENE NIEVES, AND RAFAELA RODRIGUES, EITHER JOINTLY OR SEVERALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1969.
Decided December 16, 1969.
Before Judges SULLIVAN, CARTON and HALPERN.
Mr. Aaron G. Greenberg argued the cause for appellants (Mr. Robert Shevick, attorney).
*52 Mr. Herbert E. Greenstone argued the cause for respondents (Mr. Allan J. Naishuler, on the brief; Messrs. Greenstone & Greenstone, attorneys).
The opinion of the court was delivered by SULLIVAN, P.J.A.D.
This appeal involves a family dispute over a New York State lottery ticket which became entitled to a prize of $100,000. The ticket was issued in the name "Carmen Nieves and Family." After the ticket was drawn as a winner Carmen Nieves, by letter, notified the Director of the New York Lottery that she, her sons Ruben and Gil Rene, and her daughter, Rafaela, all defendants herein, were entitled to share in the prize.
Plaintiffs are daughters of Carmen Nieves and claim to be co-owners of the ticket along with their mother and their brother Ruben. Specifically, plaintiffs aver that they and their mother and brother had been purchasing New York State lottery tickets for many months under an agreement that they would each contribute 25 cents towards the one dollar cost of the ticket and, if it won, share equally in the prize awarded. As to the particular ticket, plaintiff Mary Ann Pineiro, in her amended affidavit, states that it was purchased and paid for by her, that she filled out the name "Carmen Nieves and Family," and shortly thereafter collected 25 cents each from her mother, her brother Ruben, and her sister Carmen, the co-plaintiff herein. (Presumably the ticket was given to her mother.)
After the ticket was drawn as a winner and a check for $100,000 had been sent to defendants, plaintiffs demanded their alleged share of the proceeds. Upon refusal, suit was commenced to enforce plaintiffs' demand. Defendants' answer denied plaintiffs' factual allegations and also pleaded that the alleged agreement was illegal, null and void. Defendants then moved for summary judgment on the ground that the alleged agreement on which plaintiffs based their claim arose out of a gaming transaction and was void by virtue of N.J.S.A. 2A:40-1 and 3.
*53 The trial court ruled that the alleged transaction "springs from a lottery" and was contrary to the present public policy of New Jersey and was unenforceable in the courts of this State by virtue of N.J.S.A. 2A:40-3. Plaintiffs appeal.
Consideration of the matter requires that the provisions of N.J.S.A. 2A:40-1 and 3, relied on by the trial judge, be stated.

2A:40-1. Gaming transactions unlawful
All wagers, bets or stakes made to depend upon any race or game, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event, shall be unlawful.

* * * * * * * *

2A:40-3. Gaming transactions, obligations and securities void
All promises, agreements, notes, bills, bonds, contracts, judgments, mortgages, leases or other securities or conveyances which shall be made, given, entered into or executed by any person, the whole or part of the consideration of which is for any money, property or thing in action whatsoever laid, won or bet in violation of section 2A:40-1 of this title, or for reimbursing or repaying any money knowingly lent or advanced to help or facilitate such violation, shall be utterly void and of no effect.
These provisions are of ancient origin and contain a broad sweep against the lawfulness of gaming transactions generally. In addition, our criminal statutes make gaming transactions, including possession of a lottery ticket, criminal offenses. As to the criminality of possession of a lottery ticket see N.J.S.A. 2A:121-3 and N.J.S.A. 2A:170-18. However, shortly after the New York State Lottery was established in 1967, these criminal statutes were amended to legalize possession of a ticket for a lottery authorized, sponsored, and operated by another State, provided the ticket was purchased by the holder in that State. See L. 1967, c. 88, §§ 1 and 2. The amendments represent a legislative modification of the public policy against lotteries, and are to be read in pari materia with the provisions of N.J.S.A. 2A:40-1 and 3, making all gaming transactions unlawful and all promises, agreements, and *54 contracts in connection therewith utterly void and of no effect. For this reason the earlier cases relied on by defendants, such as Van Doren v. Staats, 3 N.J.L. 448 (Sup. Ct. 1811), are not controlling.
It is to be noted that since the decision by the trial court in this case, Article IV, Section VII, paragraph 2 of our 1947 Constitution has been amended to make legal the conducting of state-operated lotteries in New Jersey when the proceeds are used for state institutions, state aid for education. See statement attached to Assembly Concurrent Resolution No. 32 (1969) proposing to amend the aforesaid constitutional article.
In this case the purchase of the ticket in question, and its possession by defendant Carmen Nieves, was presumptively lawful. Receipt of the prize money was also legal. The winning ticket was made out in the name of "Carmen Nieves and Family." Plaintiffs are daughters of Carmen Nieves and allege that they are members of the Carmen Nieves Family within the intendment of the legend on the ticket. No public policy is offended by having this factual issue determined.
The summary judgment is set aside and the matter remanded for determination of the factual issues involved. Costs to abide the outcome.