84 N.J. Super. 63 (1963)
200 A.2d 817
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND THE STATE BOARD OF EDUCATION, PLAINTIFFS,
v.
THE BOARD OF EDUCATION OF HAWTHORNE, NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 30, 1963.
*64 Mr. Alexander E. Fasoli argued the cause for the defendants.
Mr. Joseph A. Hoffman, Deputy Attorney General, argued the cause for the plaintiffs (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
PASHMAN, J.S.C.
This is the return date of an Order to Show Cause why the defendants should not be enjoined from permitting Bible reading in the Hawthorne public schools.
The factual background of this motion will be explored briefly at the outset. On June 17, 1963 the United States Supreme Court, in the companion cases of Abington School District v. Schempp and Murray v. Curlett, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed. 844, held a law of the State of Pennsylvania and a rule of the Board of School Commissioners of Baltimore City, Maryland, unconstitutional.
On June 26, 1963 the New Jersey Attorney General at the request of the Commissioner of Education rendered an opinion in which he stated that R.S. 18:14-77 and 78 were within the strictures of the Abington and Murray cases and therefore unconstitutional. R.S. 18:14-77 requires the reading without comment, in each public school classroom, of at least five verses from the Old Testament. R.S. 18:14-78 forbids any religious service or exercise in the public schools except *65 the reading of the Bible and the repeating of the Lord's Prayer.
The Attorney General's opinion was requested pursuant to N.J.S.A. 52:17A-4(b), (c) and (h) by the Commissioner of Education. After receipt of the opinion, the Commissioner notified all county and local superintendents of schools that the practices authorized by R.S. 18:14-77 and 78 were unconstitutional and prohibited in the public schools.
On September 3, 1963 the Hawthorne Board of Education passed a resolution to the effect that Bible reading was not to be halted. The apparent ground for the passage of the resolution was that the United States Supreme Court decisions were not directly applicable to the New Jersey statutes heretofore mentioned. As a result of the action of the Hawthorne Board of Education, there is widespread indecision in the State as to the applicability of these decisions to the New Jersey statutes and practices.
Plaintiffs contend that preliminary and permanent injunctive relief is necessary because:
1. The Abington and Murray decisions apply to the New Jersey statutes.
2. Teachers, principals and superintendents of the New Jersey public school system take an oath to uphold the Constitution of the United States pursuant to N.J.S.A. 18:13-9.1, 18:13-9.2, 18:13-9.3, and 41:1-3 and those who oppose the resolution are being forced to violate their oaths.
3. Defendants, as well as those who are forced to comply with the resolution, may be liable to federal criminal prosecution under 18 U.S.C.A., § 242 (deprivation of rights under color of law) and 42 U.S.C.A., § 1987 (prosecution for violation of certain civil rights).
4. Teaching, directly or by example, in open defiance of the United States Constitution as interpreted by the Supreme Court is illegal and poor moral instruction for the youth of this State.
It should be noted that the facts and relevant laws in the Abington and Murray cases are almost identical to the *66 New Jersey statutes in question. The reading of the New Testament was permissible under the Baltimore rule and Pennsylvania statute, whereas the Old Testament is specified in New Jersey statute. Both the Pennsylvania and Baltimore laws allowed a student to be excused upon the written request of parent or guardian. However, it has been held by our highest court that even a denominationally neutral prayer is violative of the 1st and 14th Amendments of the Constitution. Engel v. Vitale, 370 U.S. 421, 430, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). A reading of the Abington and Murray cases leads the court to the conclusion that any law which requires religious exercises in the public schools is violative of the United States Constitution. As Mr. Justice Clark stated in the majority opinion in Abington and Murray, "In the relationship between man and religion, the State is firmly committed to a position of neutrality." Abington School District, Pa. v. Schempp and Murray v. Curlett, supra, 374 U.S., at p. 226, 83 S.Ct., at p. 1574, 10 L.Ed.2d, at p. 861 (1963). As individuals we understand that our religious freedom is the greatest of our heritages. As a United States Senator said: "No one can stand between God and man."
Defendants are correct in stating that the New Jersey statutes specifically in question have never been declared unconstitutional. However, the broad declaration in Abington and Murray leads the court to the conclusion that the relief sought by plaintiffs should be granted.
On their face, the Abington and Murray decisions would appear to apply to the New Jersey statutes. That one does not have to be a party to a decision to be bound thereby is a doctrine of long standing. Recently, the Supreme Court in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958), struck down a plan to postpone the desegregation of Arkansas schools because of the broad edicts in the 1954 school desegregation opinion in Brown v. Bd. of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), which was declared to be the supreme law of the land. The argument that Arkansas was not a party in the Brown case, and *67 therefore not bound by that decision, was struck down by the court. See Cooper v. Aaron, 358 U.S., at pp. 17-19, 78 S.Ct. 1401, 3 L.Ed.2d 5. The same argument was even held to be without merit by the Supreme Court of a Southern state. See McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691, 694-695 (1955).
The court's decision is based upon the legal principles heretofore adverted to and the Abington and Murray cases. Disregard of compliance with and enforcement of the supreme law of the land will result in teacher's, principal's and superintendent's actually violating their oaths of allegiance to the United States Constitution given pursuant to the laws of this State. There is also a possibility of federal criminal prosecution under the federal civil rights statutes.
The directive by the Attorney General and the Commissioner of Education has been directly flaunted by defendants. The impression which this made or will make on the children of Hawthorne cannot be measured with precision. Suffice it to say, that in these turbulent and troubled times the absolute violation of directives emanating from the United States Supreme Court by local school officials or anyone in authority is not conducive to good moral training, strength of character, and a healthy respect for the law which we are striving to imbue in all people  particularly our young people. The verses from the Old Testament are beautiful and inspiring. A daily supplication is most appropriate. We are a religious people and all our instructions presuppose a Supreme Being. The state need not be stripped of religious sentiment. But this is not the area of disagreement. The question is whether the stamp of approval allowing the unconstitutional joining of church and state  not the constitutional separation  as one of the first steps may not be the fuse to ignite a religious explosion in the future involving church and state.
Based upon letters and telephone calls received by the court as partial evidence of nationwide reaction, the court is well aware that many people disagree with Engle v. Vitale and the Abington and Murray decisions. The court realizes there will *68 be some public disagreement with the decision today. But the law is not perfect and there are always two sides to any question. There is resentment to integration in the south because of the various Supreme Court decisions. This has persisted for generations. Deeply imbedded social attitudes must be overcome. Strength was and is needed.
The fact that the Governor of Alabama and the Superintendent of Education in Columbia, South Carolina, state that they will continue to disregard the law is not a basis for any law-abiding community to conform to that approach. Those who incite and encourage disrespect for the law are as equally responsible as those who actually commit the violation. We need no more than to reflect upon the recent events in Birmingham, Alabama, Cambridge, Maryland, or even New York to realize the importance of governmental cooperation. Public officials must set the standard for behavior. They cannot war against the Constitution. If they hold the legal processes in contempt, this defiance can result only in barbarism. This is their responsibility in every city in the United States. They must assist the courts to infuse faith in the "Supreme Law of the Land." If the majority believe that prayer and Bible reading should become part of our way of life in public schools, then they must do whatever is legally necessary to regain this privilege.
Prayers and Bible reading have been a part of our school system for several centuries. Old customs are a part of us and they do not die easily. Deprivation of indulgence in accepted custom sometimes evokes uncontrolled emotions. But respect for law must prevail, understanding must prevail  not emotion. These attributes will provide a meaningful lesson for our children  not contempt for law. Future generations will honor compliance with law.
Our courts, especially our Supreme Court, have interpreted the Constitution as they understood its provisions. For each inalienable right there is an inalienable responsibility. The people must abide by these responsibilities, which in this case are court decisions. Abidance is mandatory lest there be *69 anarchy. Men have died for our right to sit here today. Whether the issue be segregation or integration or Bible reading, the decisions of our courts must be followed and upheld.
It is hereby ordered that the defendants be restrained and enjoined from authorizing, condoning, practicing or causing to be practiced, any religious ceremonies in the public schools of the Hawthorne, New Jersey School District contrary to the United States Constitution as interpreted by the United States Supreme Court.
Submit order.