242 N.J. Super. 240 (1990)
576 A.2d 338
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ANGELO FIOLA, A.C. FIOLA, INC., T/A LOTTO EXPRESS AND LOTTO EXPRESS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1990.
Decided July 11, 1990.
*241 Before Judges J.H. COLEMAN, MUIR, Jr. and SKILLMAN.
David Dembe, Deputy Attorney General, argued the cause for appellant (Douglas S. Eakeley, Acting Attorney General, attorney; Harry Haushalter, Deputy Attorney General, of counsel and David Dembe, on the brief).
Michael J. Herbert argued the cause for respondents (Hannoch Weisman, attorneys; Mark D. Schorr and Michael J. Herbert, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*242 Defendants are engaged in a business which involves the solicitation and receipt of money in New Jersey for the purchase of lottery tickets issued by other states, the transport of money to other states to purchase lottery tickets and the return of the tickets to New Jersey for delivery to customers. The Attorney General brought this action to enjoin defendants from engaging in this business, contending that it constitutes a continuing violation of New Jersey's constitutional and statutory prohibitions against gambling.
The trial court denied the Attorney General's application on the ground that injunctive relief would be inconsistent with the principle that equity will not enjoin the commission of a crime. Accordingly, the court dismissed the Attorney General's complaint without deciding whether defendants' business activities are illegal.
We conclude that defendants' business violates New Jersey's constitutional prohibition against gambling and that an injunction should be entered to prevent defendants from conducting this illegal business. Therefore, we reverse.
The New Jersey Constitution prohibits the Legislature from authorizing gambling "unless the specific kind, restrictions and control thereof" are approved by public referendum. N.J. Const., Art. IV, § 7, par. 2. The constitutional prohibition against gambling has been broadly construed. See, e.g., Atlantic City Racing Ass'n v. Attorney General, 98 N.J. 535, 489 A.2d 165 (1985); Carll & Ramagosa, Inc. v. Ash, 23 N.J. 436, 129 A.2d 433 (1957); Lucky Calendar Co. v. Cohen, 19 N.J. 399, 117 A.2d 487 (1955), on rehearing, 20 N.J. 451, 120 A.2d 107 (1956). This broad construction is reflective of New Jersey's "comprehensive," "clear" and "long standing" policy against gambling "except where specifically authorized by the people." Carll & Ramagosa, Inc. v. Ash, supra, 23 N.J. at 445, 129 A.2d 433; see also Caribe Hilton Hotel v. Toland, 63 N.J. 301, 307, 307 A.2d 85 (1973) ("our policy has become one of *243 carefully regulating certain permitted forms of gambling while prohibiting all others entirely.").
In light of the state constitutional prohibition against gambling, we conclude that the Attorney General is empowered to seek injunctive relief to prevent unauthorized gambling activity. Our courts have long recognized their power to enforce constitutional provisions even absent implementing legislation. See, e.g., Peper v. Princeton University Board of Trustees, 77 N.J. 55, 76-80, 389 A.2d 465 (1978); Cooper v. Nutley Sun Printing Co., Inc., 36 N.J. 189, 196-200, 175 A.2d 639 (1961). Our courts also have recognized that the Attorney General is an appropriate party to seek injunctive relief enforcing constitutional provisions where public interests are involved. See, e.g., Sills v. Hawthorne Board of Education, 84 N.J. Super. 63, 200 A.2d 817 (Ch.Div. 1963) aff'd o.b. 42 N.J. 351, 200 A.2d 615 (1964) (injunction prohibiting conduct of religious ceremonies in public schools); Kimmelman v. Burgio, 204 N.J. Super. 44, 497 A.2d 890 (App.Div. 1985) (injunction prohibiting use of misleading interpretative statement on ballot in connection with state constitutional amendment).
We further conclude that defendants' business constitutes gambling within the intent of Article IV, § 7, para. 2 of the New Jersey Constitution. In State v. Western Union Telegraph Co., 12 N.J. 468, 490, 97 A.2d 480 (1953), app. dism. 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953), the Court held that Western Union and one of its local managers engaged in gambling by regularly receiving betting messages and telegraphic money orders from its customers and transmitting them to a bookmaker at another location. Similarly, defendants' business of receiving money to purchase lottery tickets, transporting the money to another state to purchase lottery tickets and transporting the tickets back to New Jersey for delivery to its customers, constitutes gambling activity involving the transmission of gambling messages and money for gambling operations conducted by others.
*244 Moreover, defendants' gambling activity is clearly unauthorized. Although the voters approved a constitutional amendment authorizing the New Jersey state lottery, N.J. Const., Art. IV, § 7, par. 2(C), this amendment did not authorize anyone to participate in another state's lottery within New Jersey. As the court observed in Atlantic City Racing Ass'n v. Attorney General, supra, 98 N.J. at 546, 489 A.2d 165, "[i]n construing the provisions of a constitutional amendment that effect a limited exception to a comprehensive constitutional prohibition of gambling it is the long-standing general policy of our courts to interpret those provisions narrowly and to refrain from extending them beyond their normal and common usage." Consistent with this strict approach to the construction of gambling referenda, the authorization of a lottery operated and regulated by the State of New Jersey cannot be construed to authorize defendants' unregulated activities involving lotteries operated by other states.
This conclusion is reinforced by various statutory provisions establishing criminal liability for illegal gambling activity. Thus, N.J.S.A. 2C:37-2a(2) provides in pertinent part that "[a] person is guilty of promoting gambling when he knowingly ... [e]ngages in conduct, which materially aids any form of gambling activity" and N.J.S.A. 2C:37-3a(2) provides in pertinent part that "[a] person is guilty of possession of gambling records when, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article ... [o]f a kind commonly used in the operation, promotion or playing of a lottery...." Although defendants' criminal culpability is not before us, the conclusion appears inescapable that the transport of gambling requests and money to out-of-state gambling sites and the return of lottery tickets to gamblers in New Jersey "materially aids [a] form of gambling activity" within the intent of N.J.S.A. 2C:37-2a(2). See Cannel, Criminal Code Annotated (1990), Comment 2 to N.J.S.A. 2C:37-2 at 610-611. And it appears equally clear that defendants' possession of lottery *245 tickets for distribution to their customers violates N.J.S.A. 2C:37-3a(2).[1]
Most significantly, N.J.S.A. 2C:37-6 specifically deals with the subject of criminal liability for activity within New Jersey relating to lotteries operated by other states, as follows:

Any offense defined in this article which consists of the commission of acts relating to a lottery is no less criminal because the lottery itself is drawn or conducted without the State. This section shall not apply to any person who has in his possession or custody any paper, document, slip or memorandum of a lottery which is authorized, sponsored and operated by any state of the United States, provided that the paper, document, slip or memorandum was purchased by the holder thereof in the State wherein such lottery was authorized, sponsored and operated. (emphasis added).
Although defendants argue that N.J.S.A. 2C:37-6 exempts them from criminal liability, it is clear that at least some aspects of their business are beyond the protection provided by N.J.S.A. 2C:37-6. The part of defendants' "service" consisting of the receipt of requests to purchase lottery tickets and money for the tickets and the transport of the requests and money to out-of-state sites is completely beyond the scope of N.J.S.A. 2C:37-6, which is limited to the possession of lottery slips purchased in another state. Thus, even if defendants could be viewed as "purchasers" of the lottery tickets which they obtain in the name of their customers in other states, cf. Pineiro v. Nieves, 108 N.J. Super. 51, 259 A.2d 920 (App.Div. 1969), certif. den. 55 N.J. 593, 264 A.2d 66 (1970), the remainder of their business operation would still fall beyond the exemption from criminal liability established by the second sentence of N.J.S.A. 2C:37-6. In any event, even if N.J.S.A. 2C:37-6 were susceptible to the overly expansive interpretation urged by defendants, "criminal statutes cannot be read in such a manner as to authorize a form of gambling which the Constitution mandates is not permitted without a referendum-like vote of the people." *246 Boardwalk Regency Corp. v. Attorney General, 188 N.J. Super. 372, 377, 457 A.2d 847 (Law Div. 1982). Therefore, defendants' business involves gambling activity which has not been authorized by constitutional referendum and is consequently illegal.
Finally, we address the trial court's conclusion that the Attorney General's application to enjoin defendants' illegal gambling activity should be denied on the ground that equity will not enjoin the commission of a crime. This principle is an outgrowth of the historical separation of the courts of law and equity and the subordinate position of the equity courts  and the remedies they afforded  to courts of law. "Equity was a `gloss' on the law; its sole justification for assuming jurisdiction was that traditional legal remedies and procedures could not offer the plaintiff satisfactory relief." Developments in the Law  Injunctions, 78 Harv.L.Rev. 994, 997 (1965). But "the merger of law and equity has created a setting in which the relative merits of equitable and legal relief can be weighed by a single court, free from the problems of deference to a competing judicial system." Id. at 996; see also D. Dobbs, Remedies, (1973) § 2.11 at 115-118.
Although the principle that equity will not enjoin the commission of a crime has been invoked in New Jersey even in cases where injunctive relief was sought by the Attorney General, see, e.g., Kugler v. Romain, 110 N.J. Super. 470, 488, 266 A.2d 144 (Ch.Div. 1970), mod. on other grounds, 58 N.J. 522, 279 A.2d 640 (1971), it is now viewed primarily as a limitation upon the award of injunctive relief to private parties. See Matter of State Commission of Investigation, 108 N.J. 35, 41, 527 A.2d 851 (1987) ("New Jersey courts generally will not allow private plaintiffs to sue for injunctions to enforce the state penal laws."); see also Trisolini v. Meltsner, 23 N.J. Super. 204, 208-209, 92 A.2d 832 (App.Div. 1952); Inganamort v. Merker, 148 N.J. Super. 506, 508, 372 A.2d 1168 (Ch.Div. 1977). Thus, the Attorney General may obtain injunctive relief with respect *247 to an activity characterized as a "public nuisance" even though that activity also may constitute a violation of the criminal law. Mayor & Council of Alpine Borough v. Brewster, 7 N.J. 42, 80 A.2d 297 (1951). We further note that where an injunction is granted prohibiting activity which also may violate the criminal laws, equity intervenes "not to punish the individual for his past acts, but to afford more complete protection to [the public] by enjoining unlawful acts in the future." People v. Laman, 277 N.Y. 368, 14 N.E.2d 439, 445 (Ct.App. 1938).
Applying these principles, we have no doubt that an injunction should be issued to prevent defendants' illegal gambling activities. As previously discussed, those activities would violate the state constitutional prohibition against gambling even if the Legislature were to repeal all criminal sanctions for illegal gambling. Moreover, defendants' business is an ongoing illegal business enterprise which evidently will continue unless and until it is enjoined. Indeed, the need for injunctive relief is underscored by the fact defendants continued operating even after they received a letter from the Attorney General notifying them that their business was illegal and that an injunction had been issued against another company which operated a substantially similar business.[2] Therefore, whether or not defendants' activities subject them to criminal prosecution, the public interest requires entry of an injunction prohibiting them from violating New Jersey's constitutional and statutory prohibitions against unauthorized gambling. Cf. State v. Phoenix Savings Bank & Trust Co., 68 Ariz. 42, 198 P.2d 1018 (Sup.Ct. 1948) (holding that illegal gambling activity may be enjoined even though these operations are also subject to criminal prosecution).
Accordingly, we reverse the order of the trial court dismissing the Attorney General's complaint and remand the matter *248 for the immediate entry of a permanent injunction prohibiting defendants from continuing to engage in illegal gambling activity.
NOTES
[1] Defendants' activities also may violate federal criminal statutes prohibiting the carriage of lottery tickets in interstate commerce, 18 U.S.C. § 1301, 18 U.S.C. § 1953; see United States v. Fabrizio, 385 U.S. 263, 87 S.Ct. 457, 17 L.Ed.2d 351 (1966); United States v. Stuebben, 799 F.2d 225 (5th Cir.1986).
[2] The judgment of the Law Division in that case was subsequently affirmed by this court in an unreported opinion.