**Jenny CHUN, Plaintiff,**

v.

**The STATE OF NEW YORK; Robert Abrams, Attorney General of the State of New York, in his official capacity; and Peter D. Lynch, Director of the Division of the Lottery of the State of New York, in his official capacity, Defendants.**

**No. 91 Civ. 7048 (CBM).**

United States District Court, S.D. New York.

Feb. 19, 1992.

Alan Mukaida, Jan Blau, New York City, for plaintiff.

Joel Graber, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Jenny Chun seeks a preliminary injunction to enjoin the State of New York from prosecuting her for violating New York's anti-gambling laws. Defendants oppose the preliminary injunction and have filed a cross-motion for dismissal on the grounds of abstention and failure to state a claim under F.R.C.P. 12(b)(6). The court abstains from exercising jurisdiction for the following reasons.

## I. FACTS

Plaintiff is in the business of providing retail stores in New York with computer

terminals and software designed to accept purchase orders for out of state lottery tickets. Plaintiff currently has two such computer terminals operating in retail stores in the Bronx. Plaintiff is a licensee of ABL Ventures, a New Jersey corporation which licenses the computer software that runs Plaintiff's computer terminal. The terminal accepts orders from customers in New York for out of state lottery tickets and issues a receipt to the customer memorializing the transaction. For each $1.00 purchase order placed, customers are charged a $1.00 service fee. Plaintiff's terminals are linked to a private national computer network in New Jersey which transmits the order to an ABL agent located in the state hosting the lottery. The ABL agent then purchases a lottery ticket from a state-licensed lottery salesperson and holds it for the customer. At the time the initial order is placed, the customer signs a form giving an ABL agent power of attorney to act as the customer's fiduciary. The computer network currently accepts ticket orders for legal lotteries in eight states.

After the lottery is drawn, the customer can find out whether his or her ticket is a winning ticket by checking the newspaper USA Today, which lists winning numbers in state lotteries, or by calling the store where the ticket was purchased. If the ticket is a winning ticket, the customer fills out a claim form provided by Plaintiff or ABL. The customer has several options for collecting his or her winnings. The customer may authorize the ABL agent to redeem the ticket and forward the winnings directly to the customer or to the store for the customer to pick up. Alternatively, the customer may direct the ABL agent to transport the winning ticket directly to the customer so that he or she can collect the winnings in person. Finally, the customer may choose to travel directly to the state where the agent is located, pick up the ticket from the agent, and redeem the ticket him or herself.

## II. DISCUSSION

Plaintiff requests a preliminary injunction on the grounds that she would be irreparably harmed if she were forced to close her business to avoid criminal prosecution. Plaintiff claims that she is likely to succeed on the merits because her out of state lottery ticket service is not unlawful gambling under New York law. Even if New York law does prohibit her activities, Plaintiff argues, such an interpretation would violate the Constitution and other federal law. Defendants argue that New York anti-gambling law does apply to Plaintiff's conduct and that the law is constitutional. Defendants also urge the court to abstain from exercising its jurisdiction on the grounds that the federal issues involved depend on a difficult state law question of first impression, and because the question of whether Plaintiff's conduct is unlawful gambling involves complex regulatory issues typically reserved for the state. The court agrees that abstention is warranted.

The constitutional and federal law issues in this case turn on the interpretation of New York law regulating gambling. The state law issue now before the court is currently the subject of pending litigation in at least two cases in state court. These cases involve the precise question presented in this case: whether the type of out of state lottery ticket service provided by Plaintiff violates New York law. It is apparently an issue of first impression in the New York courts. In *State of New York v. Fortune U.S.A. New York–Queens, Ltd. et. al.*, Sup.Ct.N.Y. (Index No. 43670/91), the New York Attorney General brought a civil enforcement action to enjoin a Virginia corporation from soliciting store owners in New York to install computer terminals that accept orders for out of state lottery tickets.[1] A pending criminal case, *People v. Yong Shu Rhee*, Yonkers City Court (Indictment No. 91–1545) also raises the issue of whether the use of computer terminals in New York to place orders for out of state lottery tickets violates New York law. Mr. Rhee, a store owner who operates a terminal as an independent agent of

---

**1.** Justice Shirley Fingerhood granted the State's motion for a preliminary injunction in a memorandum opinion dated September 30, 1991.

ABL, was indicted for promoting gambling in the second degree and possession of a gambling device in violation of N.Y. Penal Law §§ 225.05 and 225.32.

■ Federal courts have a duty to abstain from adjudicating a controversy "when the case falls within one of the recognized categories of instances in which, because of related state proceedings, action by the federal courts would be thoroughly unproductive." *Law Enforcement Ins. Co., Ltd. v. Corcoran*, 807 F.2d 38, 39 (2d Cir.1986). The court finds that abstention is proper in these circumstances under both *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ *Pullman* abstention is appropriate "when difficult and unsettled questions of state law must be resolved before a substantial federal or constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). *Pullman* gives the state courts the opportunity to construe ambiguous issues of state law in a manner "that would avoid or modify the constitutional question." *Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). Federal court abstention in such cases best furthers the interests of comity and judicial economy by preventing advisory constitutional opinions by federal courts premised on interpretations of state law subsequently rendered invalid in state court. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). As the Second Circuit has stated, "[t]he policy behind *Pullman* was to avoid friction between federal and state authorities in those cases where the federal court judgment could only be an advisory 'forecast' of how the state's highest court would finally interpret state law." *Pharmaceutical Soc. of State of N.Y. v. Lefkowitz*, 586 F.2d 953, 956 (2d Cir.1978).

■ The Second Circuit has specified three conditions that must be satisfied before federal courts may invoke *Pullman* abstention: (1) that the state statute be unclear; (2) that resolution of the federal issue depends on the interpretation of state law; and (3) that the state law be susceptible to an interpretation that would avoid or modify the federal constitutional issue. *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir.1976). All three conditions are present here.

■ First, it is unclear whether Plaintiff's operation of her out of state lottery ticket service constitutes criminal conduct under New York statutes. A person violates Penal Law § 225.05, Promoting Gambling in the Second Degree, when he or she "knowingly advances or profits from unlawful gambling activity." The term "unlawful" is defined as "not specifically authorized by law." Penal Law § 225.00(12). Penal Law § 225.30 criminalizes the possession of gambling devices. Plaintiff claims that her conduct falls outside New York penal law because sister state lotteries are not "unlawful gambling" and the computer terminals used for her service are not gambling devices. Defendants rely on Penal Law § 225.40, which provides that "any offense defined in this article" consisting of acts relating to a lottery is no less criminal because the lottery is conducted in another state and is lawful under that state's law. However, this provision does not resolve the initial question of whether Plaintiff is in fact promoting unlawful gambling under § 225.05. Because the statutory provisions do not address the legality of promoting an out of state lottery which is legal in its own jurisdiction, the state law question "remains unclear." *See Catlin v. Ambach*, 820 F.2d 588, 591 (2d Cir.1987).

The second prerequisite for *Pullman* abstention is also present. The question of whether accepting orders for out-of-state lottery tickets through computer terminals in New York violates state law must be answered before the issue of whether state law violates the constitution or other federal law even arises.

Finally, the statutory provisions in question are susceptible to an interpretation

that would avoid the federal constitutional issues. Penal Law § 225.05 makes it a crime to advance or profit from "unlawful gambling". The definition of "unlawful" in § 225.00(12)—"not specifically authorized by law,"—could be interpreted to exclude gambling which is authorized by the law of the jurisdiction where it occurs, even though not authorized by New York law. Under such an interpretation, Plaintiff would not be promoting unlawful gambling because the lotteries that she promotes are lawful in the states where they are conducted. Other states have upheld similar services facilitating the purchase of out of state lottery tickets under their anti-gambling provisions. *See, e.g., State v. Powell,* 132 N.H. 562, 567 A.2d 568 (1989) (defendant who purchased Massachusetts lottery tickets on behalf of New Hampshire residents did not violate New Hampshire anti-lottery statute), *Commonwealth of Pennsylvania v. Goen,* No. 218 M.D. 1991 (Commonwealth Court of PA) (August 19, 1991) (Judge Craig) (denying Commonwealth's motion for preliminary injunction to enjoin defendant's out of state lottery service).[2] There is a very real possibility that the New York courts would construe the statutes in such a manner as to permit Plaintiff's business operations and moot Plaintiff's constitutional and federal law claims.

The present case is typical of cases warranting *Pullman* abstention in that it "concern[s] the applicability of [a] challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the litigation." *Baggett v. Bullitt,* 377 U.S. 360, 376–77, 84 S.Ct. 1316, 1325–26, 12 L.Ed.2d 377 (1964). Under these circumstances, the interests of comity and federalism favor a decision to await a state court interpretation which may well obviate the present action.

■ *Burford* abstention is also an appropriate basis for dismissal of the present case. Under this doctrine, abstention is appropriate "where there have been presented difficult issues of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (citing *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). Federal courts may invoke *Burford* abstention in cases where a difficult state law issue is determinative of state policy or where federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Id.*

■ The scope of laws regulating gambling and lotteries is clearly a matter of predominantly state concern. *See Ceraldi v. The County of Nassau,* Cv. 87–2204 (E.D.N.Y. Aug. 24, 1987) (Judge Mishler) (invoking *Burford* abstention on the issue of whether certain coin-operated amusement devices are gambling devices under N.Y.Penal Law based on the state's overriding interest in controlling gambling). New York has developed a complex and comprehensive statutory scheme to regulate gambling and lotteries. *See* N.Y. Const. Art. 1, § 9(1); N.Y.Penal Law §§ 225.00 to 225.40; N.Y. General Municipal Law, §§ 185 to 195–n and §§ 475 to 499; N.Y. General Obligations Law, §§ 5–401 to 5–423; N.Y.Tax Law, §§ 1600 to 1616. Moreover, as discussed above, three cases pending in New York courts involve efforts by the state to control similar out of state lottery ticket services in New York. A contrary interpretation of New York anti-gambling law by a federal court could impede the state's efforts to uniformly regulate gambling. Under these circumstances, it is most appropriate to allow the state courts the first opportunity to determine the application of New York law to

---

**2.** New Jersey courts, however, have found such services unlawful under state law. *See State v. Fiola,* 242 N.J.Super. 240, 576 A.2d 338 (1990); *Seaside Futures, Inc. v. State of New Jersey,* Dkt. No. W–62980–88 (Super Ct.L.D., Middlesex Co., Feb. 10, 1989), *aff'd* No. A–3320–88T3 (Super.Ct.A.D., Nov. 2, 1989).

services in New York designed to receive orders for out of state lottery tickets.

The court therefore abstains from exercising jurisdiction, but retains jurisdiction over any constitutional or federal law issues that remain after the New York state courts have conclusively determined whether computer services such as Plaintiff's, which take orders from customers in New York to purchase tickets for lotteries in other states, are lawful under New York law.