The **GREATER NEW YORK METROPOLITAN FOOD COUNCIL** and Sloan's Supermarkets Inc., Plaintiffs,

v.

Richard T. McGUIRE, as Commissioner of the New York State Department of Agriculture and Markets, Defendant.

No. 92 Civ. 3889 (MBM).

United States District Court, S.D. New York.

March 8, 1993.

Opinion and Order on Denial of Motion for Relief April 8, 1993.

Carl J. Chiappa, Zvi N. Raskin, Lauren Topelsohn, Townley & Updike, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., John W. Corwin, Jane M. Azia, Diana Zalph, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs seek a declaratory judgment that the New York State milk pricing law, N.Y.Gen.Bus.Law § 396–rr (McKinney 1992), is so vague as to violate the Due Process Clause of the United States Constitution. Defendant moves to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R.Civ.P. 12(b)(6). Alternatively, defendant requests that this Court abstain from ruling on the validity of the milk pricing law. For the reasons stated below, defendant's request for abstention is granted.

### I.

Plaintiff The Greater New York Metropolitan Food Council is a New York trade organization whose members include numerous retailers who sell milk, among other products, in New York. (Compl. ¶ 3) Plaintiff Sloan's Supermarkets Inc. is one such retailer. (Compl. ¶ 4) Defendant Richard T. McGuire is the Commissioner of the New York State Department of Agriculture and Markets, the administrative agency charged with regulating the milk industry in New York. (Compl. ¶ 5)

Plaintiffs challenge Section 396–rr of the New York General Business Law (the "milk pricing law"), under which a retailer who sells milk for an amount greater than an unspecified price incurs a risk of examination, prosecution, and civil penalties. N.Y.Gen.Bus.Law § 396–rr (McKinney 1992) ("G.B.L. § 396–rr"). Section 396–rr is a tiny portion of the vast 100–page–plus statutory scheme which regulates the sale of milk in New York. *See, e.g.,* N.Y.Gen.Bus.Law § 396–r; N.Y.Agric. & Mkts.Law § 256 (entry, inspection and investigation), §§ 256–a, 256–b (audits and accounting), § 257 (licensing), § 258–*l* (bargaining agencies), § 258–m

(fixing prices), §§ 258–o, 258–q (sanitation and inspection), § 258–r (advertising). Several courts have upheld portions of this scheme. *See Nebbia v. New York*, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) (upholding regulation of milk prices); *Noyes v. Landel*, 18 N.Y.S.2d 676, *aff'd*, 259 A.D. 1108, 21 N.Y.S.2d 616 (1940) (holding that milk control law protects all producers from hazards, distributes burdens equally, and does not violate due process); *cf. People v. Two Wheel Corp.*, 128 A.D.2d 507, 512 N.Y.S.2d 439 (2d Dep't 1987), *aff'd*, 71 N.Y.2d 693, 530 N.Y.S.2d 46, 525 N.E.2d 692 (1988) (upholding prohibition of "unconscionably excessive" prices during certain market disruptions). The milk pricing law took effect on May 2, 1991.

Plaintiffs filed their complaint on May 29, 1992. Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Section 396–rr is impermissibly vague and, therefore, violates the Due Process Clause. (Compl. ¶ 39) Plaintiffs seek also an injunction to prevent defendant from enforcing Section 396–rr and regulations thereunder, (Compl. ¶¶ 41–42) and damages for an alleged deprivation of their rights, pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 43–44)

Plaintiffs claim that the milk pricing law is unconstitutionally vague because it fails to "give fair warning or fair notice to milk retailers of whether the prices they charge for milk constitute violations of the statute." (Compl. ¶ 36) In more basic terms, plaintiffs allege that retailers such as Sloan's do not know how much they may lawfully charge their customers for milk. (Compl. ¶ 35)

The milk pricing law contains two paragraphs that purport to define the conduct the law forbids, and therefore are relevant to the issue at hand:

3. No person shall sell or offer for sale fluid milk for an amount which represents an unconscionably excessive price.

4. Whether a price is unconscionably excessive is a question of law for the court. Evidence that:

(a) the price charged at retail for fluid milk represents a gross disparity be-

tween the raw milk price paid to producers plus a reasonable handler's processing and distribution charge and the price at retail; or

(b) the price charged at retail for fluid milk increased a greater amount than the price increased for an equivalent volume paid to producers under an order or interim price of the commissioner pursuant to section two hundred fifty-eight-m of the agriculture and markets law; and

(c) in addition to paragraphs (a) and (b) of this subdivision, the increased price charged by the person was not attributable to additional charges imposed by its suppliers, or other charges beyond the control of the person, including the cost of labor, shall constitute *prima facie* proof of a violation of this section in any proceeding commenced by the attorney general pursuant to subdivision five of this section.

G.B.L. § 396–rr.

In addition, subdivision 2 and 5 of the law describe the administrative procedure to be followed by those charged with enforcing the law. Subdivision 2 charges the New York State Commissioner of Agriculture and Markets (the "commissioner")—now defendant McGuire—with the responsibility to examine the retail prices of fluid milk around the state to determine whether they exceed 200 percent of the price paid to producers[1] and, if so, "if the prices ... in the state or in any area thereof appear to the commissioner unconscionably excessive." G.B.L. § 396–rr(2). If the commissioner finds a price that appears unconscionably excessive, he "shall, by written notice, provide any person found to be selling or offering for sale fluid milk at such price, an opportunity to discontinue such price levels or to demonstrate that it is not unconscionably excessive." *Id.* Within three days after receiving notice, such a person may submit a written reply in an effort to satisfy the commissioner "that the price

level which resulted in the issuance of the notice is justifiable or has been terminated." *Id.* Subdivision 2 requires that the commissioner forward his findings to the Attorney General, who is empowered by subdivision 5 to apply in state Supreme Court for injunctive relief and the imposition of a civil penalty ranging from a maximum of $1000 to a maximum of $5000, depending on the weekly volume of milk sold, as well as an order of restitution to the consumers involved. G.B.L. § 396–rr(5).

## II.

Defendant asks that this Court decline jurisdiction in deference to New York State. (Def.Mem. at 15–22) I agree with defendant that abstention is warranted in this case under what is commonly termed the *Pullman* abstention doctrine. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

This opinion addresses only the constitutional issues relating to abstention; the substantive issues relating to the milk pricing law are separate matters entirely. To justify the milk pricing law, the New York State Legislature found "that the continued production of milk in the state is threatened by a rapid decline in the prices paid to farmers for milk [and] that this substantial decrease in farm price has not been reflected in reduced costs to consumers, and that ... [t]his has resulted in concern by the legislature that some persons have taken unfair advantage of consumers by charging unwarranted and grossly excessive prices for milk." Milk Prices Act, ch. 84, 1991 N.Y. Laws 127 (May 2, 1991). It should be noted that although "economic regulation is subject to a less strict vagueness test" than criminal laws, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982), vagueness analysis nevertheless applies to economic regulation, and courts have voided economic regula-

---

1. According to Section 396–rr(2), the commissioner is to begin an examination once (1) the commissioner has, pursuant to N.Y.Agric. & Mkts.Law § 258–m (McKinney 1992), established a minimum price to be paid to producers of milk, and that price exceeds the price set by the federal

government for milk in New York, pursuant to 7 U.S.C. 608c and 7 C.F.R. §§ 1000.1–1002.85 (1990), promulgated thereunder; or (2) "at any time when the retail price of fluid milk exceeds two hundred percent of the prices for [raw] fluid milk [paid to producers]." G.B.L. § 396–rr(2).

tion on vagueness grounds. *See, e.g., Chalmers v. City of Los Angeles,* 762 F.2d 753, 757 (9th Cir.1985); *Cook Family Foods, Ltd. v. Voss,* 781 F.Supp. 1458, 1467 (C.D.Cal. 1991).

Defendant argues that because the milk pricing law "is still in its infancy and has never been construed by any New York State court ... this court should stay its hand until the New York courts have had the opportunity to resolve any ambiguities that may exist." (Def.Mem. at 15, 17) Defendant argues that "[o]nly once a state court has before it an actual enforcement action where it can consider the statute in light of a given retailer's actual practices, its prices, its handling costs and the method by which these costs are arrived at, will it be able to fully expound on the statute's scope." (Def.Mem. at 17)

The Attorney General, representing defendant, does not explain what "light" could be shed by "a given retailer's actual practices" on the meaning of a statute that must be understood by all retailers, nor does he proffer any suggested reading of the statute. Rather, he simply offers a hollow prophesy, in the manner of Mr. Micawber, that when a case arises in state court, some meaningful interpretation of the statute will turn up. *See* Charles Dickens, *David Copperfield* (Penguin Classic Books 1985). Insofar as the Attorney General's argument suggests that an interpretation cannot be discerned until someone is charged with violating the statute, he may be conceding unwittingly that the statute is impermissibly vague. *See Chalmers* and *Cook, supra.* However, the statute is before me and I must try to make sense of it even if counsel will not.

The Supreme Court long has recognized that federal courts usually have no authority to abstain from the exercise of jurisdiction that has been conferred: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *New Orleans Public Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 358, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989) (quoting *Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257

(1821)). Although in some cases abstention because of undue interference with state proceedings is "the normal thing to do," *New Orleans Public Serv.,* 491 U.S. at 359, 109 S.Ct. at 2513 (citing *Younger v. Harris,* 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)), the Supreme Court has defined carefully the circumstances in which such abstention is permissible, and abstention remains " 'the exception and not the rule.' " *Id.* (citing cases).

▮▮▮ Under the *Pullman* abstention doctrine, a federal court should abstain from deciding the constitutionality of a state law when the meaning of the law is uncertain and a state court's clarification of the law might make a federal court's constitutional ruling unnecessary. *Railroad Comm'n v. Pullman Co.,* 312 U.S. at 501–02, 61 S.Ct. at 645–46. The Second Circuit has specified three conditions that must be satisfied before a federal court may invoke *Pullman* abstention: (1) the state law must be unclear; (2) resolution of the federal issue must depend on the interpretation of the state law; and (3) the state law must be susceptible to an interpretation that would avoid or modify the federal constitutional issue. *See Chun v. New York,* 807 F.Supp. 288, 291 (S.D.N.Y.1992) (citing *McRedmond v. Wilson,* 533 F.2d 757, 761 (2d Cir.1976)); *see also Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Baggett v. Bullitt,* 377 U.S. 360, 364, 84 S.Ct. 1316, 1318, 12 L.Ed.2d 377 (1964). In other words, "[a]bstention under *Pullman* is proper where a state proceeding can be brought with reasonable promptness, and a decision on an unsettled question of state law may moot the federal case." *Berman Enter., Inc. v. Jorling,* 793 F.Supp. 408, 413 (E.D.N.Y.1992).

The Supreme Court has decided that abstention is not warranted unless there is a "substantial likelihood" that the state court's clarification would avoid the federal court's constitutional ruling. *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244; *Baggett v. Bullitt,* 377 U.S. at 364, 84 S.Ct. at 1318. Defendant argues that "any determination by a state court applying this statute will at the very least cause the statute to be viewed in a

different, and more defined, light, and may well moot any vagueness challenge altogether." (Def.Reply at 10) Defendant claims also that if the Attorney General decides to bring a judicial proceeding, Sloan's will be able to raise its constitutional claims at that time, and that plaintiffs thus are protected sufficiently. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986) (for abstention purposes, "it is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceeding").

■ The requirements for *Pullman* abstention are satisfied here. The milk pricing law is unclear; the question of whether this lack of clarity voids the law on vagueness grounds depends on the interpretation of state law; and, as demonstrated below, the law is susceptible to an interpretation that avoids the federal constitutional issue. Because there is a "substantial likelihood" that a state court's clarification will avoid any federal constitutional ruling in this case, this Court will abstain.

What follows is one possible reading of the milk pricing law. It bears emphasis that this reading of the statute is not a holding that the statute *must* be so read, or a finding that a state court could not look on the same dismally drafted legislation and find it unconstitutionally incomprehensible. Rather, this is merely a suggestion that a state court *could* so read the statute, which suggests in turn that this Court should abstain from entertaining doubts as to the law's constitutionality.

At the outset, it should be emphasized that only subdivisions 3 and 4 of the milk pricing law directly affect the conduct of sellers of milk, because only a court can issue a binding order that will affect the rights of such sellers. That the commissioner or the Attorney General might be perplexed by the subdivisions defining their responsibilities, or that plaintiffs here might be uncertain, for example, as to what standards the commissioner would use to decide whether a price "appears unconscionably excessive" and thus whether a proceeding should be started, is of no moment, so long as the statute provides milk sellers with discernible standards that govern their own conduct.

Although subdivision 3 seems initially to be the only one that defines what is forbidden under the statute—*i.e.,* the selling of milk at "an amount which represents an unconscionably excessive price"—neither that subdivision nor the statute of which it is a part contains a definition of what constitutes "an unconscionably excessive price." Subdivision 4, however, does define what constitutes "*prima facie* proof of a violation of this section"—which is to say, *prima facie* proof that a person has charged an "unconscionably excessive price," and accordingly may be read to give content to the phrase "unconscionably excessive price," in accordance with the principle of statutory construction that ambiguous words in a statute may be construed in connection with, and their meaning ascertained by reference to, other words with which the ambiguous words are associated. *See* N.Y. Statutes Vol. 1 § 239(a) (McKinney 1971), and cases cited therein.[2]

Subdivision 4 lists three conditions whose presence signals a violation, at least *prima facie:* (a) "gross disparity" between the retail price and the price paid to producers; (b) a retail price increase greater than an increase granted by the commissioner to milk producers; and (c) a retail price increase not attributable to an increase beyond the retailer's control in its own costs. That subdivision itself is uncertain in at least two respects. First, neither there nor anywhere else in the statute does one find a definition of what constitutes a "gross disparity" between the retail price and price paid to producers. Second, although the paragraphs of the statute are joined by connectives mandating the presence of (a) "or" (b) "and" (c), leaving open the possibility that one or at most two

**2.** The copious anthology of such rules of construction in McKinney's Statutes, the volume that precedes all others in that legislative compilation, is a virtual dispensary of judicially crafted crutches, braces, implants and other legislative prostheses which suggest by their sheer number and variety that New York courts do not necessarily expect the Legislature to say what it means and/or mean what it says.

elements need be present, paragraph (c) it-self begins with the phrase "in addition to paragraphs (a) *and* (b) of this subdivision" (emphasis added), suggesting that all three elements must be present.

The first problem—finding a definition for "gross disparity"—may be solved by examin-ing an earlier subdivision of the statute. Subdivision 2 authorizes the commissioner to start an inquiry into whether an "unconscio-nably excessive" retail price exists when he finds a retail price that exceeds 200 percent of the price paid to milk producers. It seems reasonable to conclude that the legislature intended a retail price in excess of 200 per-cent of the price paid to producers to be regarded as a price reflecting a "gross dis-parity" between the retail price and the price to producers. Certainly, a retailer could not be held to be on notice that any lesser price than 200 percent of the price paid to produc-ers should be regarded as reflecting a "gross disparity" between such wholesale and retail prices.

That leaves the sorting out of the "or" and "ands" between and within the three quoted paragraphs to determine which of the three elements must be present to establish a vio-lation. In aid of that effort, the rules of statutory construction in New York again provide some assistance. Thus, it has long been the rule in New York that the words "or" and "and" in a statute may be construed as interchangeable when such a construction is necessary to effect the intent of the Legis-lature. *People ex rel. Municipal Gas Co. v. Public Service Comm'n.*, 224 N.Y. 156, 120 N.E. 132 (1918); *see* N.Y. Statutes Vol. 1 § 365 (McKinney 1971) (collecting cases). Here, because subdivision 2 of the statute shows that the Legislature did not intend for the commissioner to undertake an investiga-tion unless a retailer's price exceeded 200 percent of the wholesale price, it seems ap-parent that the Legislature must have in-tended a showing of such excess also to be an indispensable element of the Attorney Gener-al's *prima facie* case if the matter went to court. Therefore, it appears that whatever else may be necessary to such a case, the "or" at the end of paragraph (a) of subdivi-sion 4 should be read as an "and."

Paragraphs (b) and (c) of subdivision 4 speak to different situations. The former deals with a retail price increase that follows and exceeds a wholesale price increase; the latter deals with a retail price increase that follows and exceeds an increase in costs to the retailer other than the wholesale cost of milk, or follows no such increase. It appears here that the Legislature intended that the *prima facie* case consist of a showing that one or the other has occurred. As a result, the "and" at the end of paragraph (b) proba-bly should be read as an "or," and the intro-ductory phrase in paragraph (c)—"in addi-tion to paragraphs (a) and (b) of this subdivi-sion"—should be interpreted to mean simply that the element set forth in paragraph (c) following that introductory phrase should be considered by the court in addition to the elements in the preceding paragraphs, as appropriate. In essence, this reading of the statute would make the phrase "unconsciona-bly excessive price" in subdivision 2 equal the elements of a *prima facie* case enumerated in subdivision 4, absent any other definition for that phrase.

The above reading of the statute would construe this enactment to mean that no person may sell milk at a price that is both (i) in excess of 200 percent of the wholesale price of milk, and (ii) the result of a price increase which exceeds either an increase in the wholesale price or an increase in that person's costs. Such a construction would give a reasonably clear meaning to the stat-ute, carry out the Legislature's implicit in-tent, and permit a retailer to conform its conduct to the law's requirements. It would also serve yet another valuable and familiar rule of statutory construction, both in New York and elsewhere, which favors a reading that upholds constitutionality if such a read-ing is fairly possible. *See* N.Y.Statutes Vol. 1 § 150 (McKinney 1971) (collecting cases); *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981) (citing cases).

■ There remains the question of wheth-er this issue will probably come before a state court. There is no state court proceed-ing now pending. Rather, the parties have

said that the commissioner simply has made inquiry into plaintiffs' pricing, and at some future date the Attorney General may begin an enforcement proceeding, depending on the outcome of the commissioner's investigation. Plaintiffs and others similarly situated have two choices. One is to be guided by the above reading of the statute or any other they and their lawyers may find congenial, act accordingly, and see if the Attorney General chooses to sue them. The other is to bring a declaratory judgment action in state court. Although a federal court should not simply abstain from deciding the constitutionality of a challenged state statute on the ground that the plaintiff can always bring a declaratory judgment action in state court, *see New Orleans Public Serv.*, 491 U.S. at 359, 109 S.Ct. at 2513 (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909)), we are dealing here with a statute that might be construed authoritatively in a state court to be constitutional, with no demonstrably intolerable chilling effect on plaintiffs until such an authoritative decision is forthcoming. It is state courts and not federal courts that are charged with authoritative construction of state statutes, and the balance here tips in favor of abstention. For the reasons stated above, this Court will abstain from deciding plaintiffs' claims.

SO ORDERED:

## OPINION AND ORDER ON DENIAL OF MOTION FOR RELIEF

Plaintiffs now complain that the March 29, 1993 order refusing to change the result in the March 8, 1993 Opinion and Order (the "Opinion") herein unfairly suggests that their application for such relief was untimely in addition to being devoid of merit. As to timeliness, they have a point. Accordingly, the March 29, 1993 order is withdrawn, and this one is substituted in its place and stead.

In demanding reconsideration of the Opinion, plaintiffs advance two arguments. One is that there is no threshold issue of state law justifying abstention. That is wrong. The threshold issue is the meaning of the statute they challenge, as the March 8 Opinion and Order discussed at copious length.

Second, plaintiffs argue that the interpretation of the statute proffered tentatively in the Opinion raises an equal protection problem, as follows: one milk retailer sells milk consistently 10 cents in excess of 200 percent of wholesale price; a second retailer raises his price by more than any wholesale price increase and more than any increase in his costs would justify, to a price that is only 5 cents in excess of 200 percent of the wholesale price; the reading of the statute suggested in the Opinion would mean that there was a prima facie case of price gouging against the second retailer but not against the first.

There are numerous answers to this argument, of which two—one more than is necessary—should suffice. First, treating the hypothetical on its own contrived terms, the first retailer was not born charging the hypothesized price; at some point that retailer must have raised his price to reach the hypothesized level. At that point, a diligent law enforcement authority presumably would have acted. Second, the legislature may, if it chooses, concern itself simply with price increases and not with absolute price levels, preferring to leave the latter but not the former to the benign effects of competition. That may be inconsistent, and poor economics, but it is hardly a suspect distinction. Indolent price gougers are not yet a protected class. Plaintiffs have not suggested that the statutory distinction [between those who raise prices and those who simply charge high prices] burdens a suspect group or a fundamental interest; and in cases where these considerations are absent, courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn ... a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legiti-

mate purposes that we can only conclude that the legislature's actions were irrational.

*Vance v. Bradley,* 440 U.S. 93, 96–97, 99 S.Ct. 939, 942–43, 59 L.Ed.2d 171 (1979).

The motion for relief from the Opinion is—again—denied.

SO ORDERED.